Marshall, Ch. J.,
delivered the opinion of the court. — This suit was brought in the court of the United States for the fourth circuit and district of Maryland, on the following bond :
Know all men by these presents, that we, Thomas Robertson, Levin Ballard, Arnold E. Jones, Mathias Dashiell, Charles Jones, Marcey Maddux, William Done, George W. Jackson and John H. Bell, all of Somerest county and state of Maryland, are held and firmly bound unto the United States of America, in the sum of one hundred thousand dollars, current money of the United States, to be paid to the said United States, their certain attorney or attorneys ;to the which payment well and truly to be made and done, we hereby bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents, as witness our hands and seals this 15th day of July, in the year 1820. Whereas, on the first day of August 1817, ^ , the Bank of ^Somerset became indebted to the United States for the J sum of $69,079.62 deposited in said bank, by George Brown, collector, and others, for the final payment of which sum, and the better security of the United States, an agreement has this day been entered into between the United States on the one part, and the president and directors of the said Bank of Somerset, on the other part, in the words following, vm. :
“The directors agree to pledge to the government of the United States, the entire estate of the corporation as a security for the payment of the original principal of the claim, on or before the expiration of the term of five years, from the date of the compromise; and for the fulfilment of this engage-. ment, they will bind themselves individually to the United States, in a sum equal to the amount of the debt; and in. order that no misunderstanding may hereafter arise respecting the true intent and meaning of the phrase, ‘ the entire estate of the corporation,” and the nature and extent of the individual obligation, it is hereby declared to be distinctly understood by both parties, that the entire estate of the corporation means not only all the real estate of the said Bank of Somerset, but also all the debts of every description which are now due and owing unto the said bank, or to which the said bank may have any legal or equitable right whatever; and it is also understood by both parties, that the bond of individuals is not intended as a contract for the absolute payment of the said sum of money from their private estates, but as a guarantee that the said president and directors and their successors will fulfil their agreement to preserve entire the estate of the corporation, until the United States are paid and satisfied the said original principal of their claim, and to give a preference to the United States over any other creditor of the bank. The United States agree, upon receiving the bond of individuals, to assign the direction and management of the suit which has been instituted in the district court of Maryland, against the bank, to the individuals who thus enter into bond ; and at the expix-ation of the said term of five years, upon the payment of the sum of $69,079.62, on or before the day of payment, the United States will give a full and free acquittal to the said coi'poration for the whole claim.”
*Now, the condition of the foregoing obligation is such, that if the said president and directors, and their successors, shall on their *417 part well and faithfully perform the said contract, and shall, in preference to any other claim against the said bank, pay into the treasury of the United States the said sum of $69,079,62, on or before the 15th of July 1825, then the foregoing obligation to be void, otherwise to remain in full force and virtue in law. Signed and sealed by Thomas Robertson, Levin Ballard, Jun., Arnold E. Jones, Mathias Dashiell, Charles Jones, Marcey Maddux, William Done and George W. Jackson. — John H. Anderson, witness.
The issues joined on several special pleas filed by the defendant, were withdrawn by consent; and nil debet pleaded, under an agreement that the parties might give any matter in evidence which might have been given under any form of pleadings.
It will be perceived, from the condition of the bond, that the Bank of Somerset had become indebted to the United States in a large sum of money on account of deposits made by a collector, and that a suit had been instituted against the bank in the court of the United States for the district of Maryland. On the 15th of July 1820, an agreement was entered into between the United States and the president and directors of the Bank of Somerset, which is recited in the condition of the bond. The principal object of this agreement was, to secure the whole estate and property of the bank, of every description, for the payment of the principal debt, on or before the expiration of five years from the date of the agreement. For the performance of this engagement, the directors agree to bind themselves individually, in a sum equal to the amount of the debt; but this bond of individuals is not to be understood as a contract for the absolute payment of the said sum of money, but as a guarantee that the president and directors, and their successors, will fulfil their agreement to preserve the entire estate of the corporation, until the United States are satisfied with the principal, and to give a preference to the United States over any other creditor of the bank. The United States on *their part agree, on receiving this bond to assign the direction and management of the suit to the *- obligors.
The construction - of this bond has been discussed at the bar, as a preliminary question to the several points made in the cause. The United States contend, that the agreement recited in the condition of the bond, is made by the then president and directors of the Bank of Somerset, in their individual as well as corporate character, and that the defendant is bound individually, not merely to the extent of the obligation created by the bond, but also so far as he would have been bound had he signed the agreement in his private character. The defendant contends, that the agreement was made by the president and directors for the bank, as its legitimate agents, and is to be treated as an engagement made in their corporate character ; and that the bond is an undertaking by the obligors, in pursuance of that agreement, by which they become sureties for the bank, that the president, (directors and their successors will perform their engagements with good faith.
In pursuing this inquiry, the form of the instrument and the natui-e of the transaction must be considered. The agreement between the United States and the bank is not spread on the record, otherwise than as it is recited in the condition of the bond. It does not appear to have been signed by the president and directors individually. This could not have been omitted, *418 had they intended to bind themselves individually by that agreement. As an official act, it was sufficient, that it be entered on their journals ; as an undertaking of individuals, it ought to be signed by them. It is referred to in the recital of the condition, in these words : “ and whereas, an agree ment has this day been entered into between the United States on the one part, and the president and directors of the said Bank of Somerset of the other part, in these words,” &c. This language indicates, we think, an agreement by the president and directors, in the corporate character in which they are mentioned, rather than in their individual characters in which they are not mentioned. If the president and directors are bound in their private character, is every member of the board bound, whether he was present and assented to the agreement or not? The incorporating act declares, that the affairs of the bank shall be managed by a president and ten x , *directors. Are they all bound by this argeement ? If not, who of •* them are ? The paper itself, as recited, does not inform us. If we lookout of the condition of the bond, to the journals of the corporation, for' instruction, we are infoi-med, that at a meeting of the board on the 15th of July 1820, the president and six directors attended. If it be contended, that this record fixes the members present, one of them, George Jones, who was a party to the agreement, did not sign the bond. Is he bound ? If avg are permitted to travel out of the bond, and search the journals of the bank for information on this subject, the same record informs us, that this AAehole business was transacted by the board, in their corporate character, as acting for the bank.
The great object of the agreement was, to pledge the estate of the bank, to secure, so far as it would secure, the payment of the debt due to the United States. None could give this pledge, but those Avhose official duty it Avas to manage that property ; and they could only give it in the character in Avhich they Avere intrusted with its management. They alone, in their political character, and their successors, could redeem this pledge ; for only those Avho retained the management of the affairs of the bank, during the five years given for the payment of the debt, could keep the estate together, and apply it exclusively to the use of the United States.
To what purpose should the United States require, that the directors should bind themselves individually, if they were already bound individually by the agreement itself ? This stipulation, being for the benefit of the United States, must be considered as introduced at their instance ; and if Ave may look at the proceedings of the board on the 35th of July 1820, we are informed, that the agent of the board, who carried propositions to the secretary of the treasury, reported, that he had made a compromise on the basis of the second proposition, with this modification made by the treasury. But without going out of the bond, this stipulation must be considered as being made on the part of the United States. For what purpose, we repeat, was it made ? If the individual members of the board were bound by the agreement, why require a bond from the same persons, as sureties for themselves ? They could be sued upon the original agreement as well as upon the bond. *Why this complex proceeding ? Upon the hypothesis of individual obligation, under the agreement, it is inexplicable. Upon the hypothesis, that the original agreement was a mere corporate, act, the whole, transaction is accounted for. The agreement being *419 a corporate act, could not affect the members of tbe board in thtir private characters ; it was a mere pledge of the faith of the corporation, for the violation of which, the corporate funds would alone be responsible, and . would add nothing to the security of the government; because the liabil- ^ ity of those funds was already as complete as any corporate act could make lit. The obligation of individuals, therefore, was required, who should be .■ sureties that the corporate body would faithfully observe its contract. This 1 is expressly declared to be the effect of the bond, and the purpose for which it was given. The words are, “and it is also understood by both parties, that the bond of individuals is not intended as a contract for the absolute ! payment of the said sum of money from their private estates, but as a guarantee that the said president and directors, and their successors (not their heirs and executors) will fulfil their agreement to preserve entire the estate of the corporation,” &c.
The words which follow this recital of the condition, serve still further to show the understanding of the parties. They are, “ now, the condition of the foregoing obligation is such, that if the said president and directors, and their successors, shall on their part well and faithfully perform the said contract,” &c., then the foregoing obligation to be void, &c. ; obviously referring to a contract made by the corporate body, and' to be performed by the corporate body.
An argument against this construction of the instrument has been founded on the following clause : “ The United States agree, upon receiving the bond of individuals, to assign the dix-ection and management of the suit Avhiclx has been instituted in the district court of Maryland to the individuals who thus enter into bond ; and at the expiration of the said term of five years, upon the jxayment of the sum of $69,079.62, on or before the day of payment, the United states will give a full and free acquittal to the said corporation for the whole claim.” The court does xxot allow to this clause that influence over *the agreement for which the counsel for the ^ • United States contends. Being a stipulation to assign the manage- ■- ment of the suit, not the judgment which should be obtained, the power might have been conferred on the president and directors and their successors, without releasing the debt. If, as we suppose, it was intended as an inducement to incur personal responsibility, by affording security to those who should incur it, the clause rather furaxishes an ax-gument in favor of that construction for which the defendant contends.
We are of opinion, that the agreement recited in the condition of the bond on which this suit is instituted, is, in fact, made, and was understood by the parties to be made, by the United States, with the Bank of Somerset, acting by its lawful agents, the president and directors of that bank ; and that the obligors bound themselvers, as sureties, that the bank would faithfully perfonn its engagements.
At the tx-ial of the cause, the following points were made at the bar by the counsel for the United States, and the opinion of the court was asked upoxx them.
1. That, by the bond on which this suit is bx-ought, the. defendant has undertaken that the estate of the bank, including its debts, shall be applied, in the first instance, to extinguish the debt due to the United States, in five years, if that estate was sufficient to extinguish it; and if the jury shall be *420 of the opinion, that the estate, at the date of the bond, was sufficient, and might, by the use of proper means on the part of the defendant and his co-obligors, have been rendered available to that purpose, within the time limited' by the bond, the defendant is answerable for any portion of the debt ascertained upon the face of the bond, which remained due to the United States, at the expiration of the five years given by that bond, and which still remains due.
2. That it being admitted the statement of the condition of the bank, on the 11th May 1820, which has been offered in evidence, proceeded from the obligors in the bond, 'and has been furnished by them, it is an admission on their part, that the estate of the bank was, at that time, sufficient to have paid the debt due to the United States, and throws the burden of proof on the defendant, to show how it afterwards became insufficient; and in the % ., absence of satisfactory proof on this *point, the estate of the bank is -* to be held sufficient to have paid the debt due to the United States, within the five years given by the bond, and the defendant is answerable for any portion of that debt which remains unpaid to the United States.
3. That, among the duties imposed on the defendant by the bond, was that of calling in the debts due to the bank, in the most expeditious and effectual manner ; and if the jury shall believe, that a resort to attachment against the bank debtors, in the name of the United States, on the judgment which had been obtained by the United States against the bank, was the most expeditious and effectual manner, and that the obligors in the bond have not resorted to this mode of proceeding, they have been guilty of a breach of their undertaking in the bond, and are answerable for the full value of any debt which might have been secured by that mode of proceeding.
4. That by the bond, on which this suit is brought, the obligors were bound to use diligence in enforcing the collection of the outstanding debts due to the Bank of Somerset, at the date of the bond ; and that if they have failed to employ the best means which the law placed in their power, to enforce such collection, they are responsible for all losses proceeding from their neglect to use those means, &c.
5. That having been authorized to proceed against the debtors of the bank, on the judgment which had been obtained by the United States against the Bank of Somerset, and to enforce the proceedings against those debtors, as garnishees, which had already been instituted in that suit, as well as to take out new attachments against other debtors, in the name of the United States, the plaintiffs in that judgment ; if, instead of resorting to these proceedings, they brought new actions against their debtors, in the state courts, and by the adoption of this latter course, débts have been lost which might have been saved by resorting to the process of attachment against those debtors, under the judgment before mentioned, the defendants are liable for all such losses.
6. That if the jury shall be satisfied, that the statement of the condition of the bank, on the 11th May 1820, was its true condition at that time, and that no proof has been offered by the defendants to show that this condition was variant at the date of the bond, the defendants can repel the inference * of the ^solvency of the bank, in no other way, than by showing to the ° -I satisfaction of the jury, that the debtors, whose debts compose the *421 aggregate of $106,995 presented on the statement, were wnolly or partially insolvent; and that the defendant was unable to collect the debts, either by reason of such insolvency, or by some legal impediment which they could not control; and that, in the absence of such proof, the legal presumption will be, that such debtors were solvent, and that those debts might have been collected, by the use of due diligence ; and if they have not been collected and paid over to the United States, that the defendant is liable for the amount of the debt acknowledged in the bond to be due to the United States, or for whatever balance of that amount remains unpaid to the United States.
7. That attachments, at the suit of the United States, which had been laid in the hands of the debtors to the Bank of Somerset, prior to the date of the bond, fixed the debts in the hands of such debtors ; and that such debts could be discharged only by the payment of good and lawful money, equal in value to the amount of such debts ; and that if the obligors in the bond on which this suit is brought, did afterwards receive such debts from the debtors, in depreciated notes' of the Bank of Somerset, or any other depreciated paper, the defendant is liable to the United States, in good and lawful money, for the amount of debts so received in depreciated paper, if there be no proof that such debtors were in circumstances so insolvent, as that they could not have paid their debts in good and lawful money.
8. That by virtue of the agreement recited in the bond, on which this suit is brought, and of the bond itself, the debts due to the bank were so pledged to the United States, that the obligors in the bond had no right to receive these debts in the depreciated notes of the Bank of Somerset; and that if, after the date of the bond, they did so receive them, they are liable to the United States, in good and lawful money, for the amount so received, if there be no proof that the debtors from whom they were so received were in circumstances so insolvent, that they could not have paid these debts in good and lawful money.
9. That by virtue of the bond and the agreement therein *recited, the defendant was bound to see that the estate of the bank, as described in the agreement and bond, should be applied, in the first instance, to the payment of the debt due to the United States, before any payment made to any other creditor; and that if any portion of that estate has been paid to the holders of certificates of deposit, which were outstanding at the date of the bond, or if these certificates have been received in payment of debts due by the holders to the bank, the defendant is liable for all sums so paid to the holders of such certificates, and for the amount of all debts for which such certificates have been received in payment, if there be no proof that the debtors from whom they were so received were in circumstances so insolvent, that they could not have paid those debts in good and lawful money. [*656
10. That in all cases where, after the date of the bond, moneys have been shown to have been paid under executions, at the suit of the bank, placed in the hands of Charles Jones, the sheriff of the county, who is admitted to have been one of the obligors in the bond, the defendant is liable for all such amounts so received by the said Charles Jones.
11. That the defendant had no authority to pay away any part of the estate of the bank, as described in the bond, to the purpose of relieving liens *422 on the estates of the debtors to the bank ; but their duty was to have collected the debts due to the bank, out of the estate of such debtors, which they will be presumed to have been capable of doing, uutil the contrary is proved ; and in the absence of such proof, they are liable to all sums paid away for such liens.
12. That it was in the power of the obligors to have proceeded by attachment against the debtors of the bank, under the judgment which had been obtained in the district court of the United States, the institution of new suits against such debtors in the county court of Somerset was unnecessary, until it shall be proved that they could not have so proceeded ; and that the costs and expenses attending these suits were incurred by the obligors, in their own wrong, and must fall upon them ; and the defendant is entitled to no credit on account of such costs and expenses, but must answer for the value of these debts, clear of any other costs and expenses, than would have arisen from his proceeding by attachment in the courts of the United States. .
*13. That the defendant was not authorized to diminish the amount of the estate of the bank, by the payment of a commission for collection, to William Done, one of the obligors.
14. That if the resolution of the board of directors, of date the 16th June 1818, authorizing the stockholders to assign their stock at ninety dollars, in discharge of their debts, was made for the purpose of shielding the stockholders from the judgment of the United States, and the process of attachment against the debtors of the bank which the United States were authorized to sue out against these debtors, such transfers of stock were fraudulent and void ; and it was the duty of the obligors to have re-asserted these debts, as they stood prior to such transfer of stock, and to have proceeded to recover them by the legal process of attachment, in the name of the United States ; and that if they failed to do so, such failure was a breach of their duty under the said bond and contract; and if such debts might have, been so recovered, by the use of due diligence, the defendant is liable for the amount.
15. That if process of attachment, at the suit of the United States, had been served on these stockholders, prior to such transfer in payment of their debts, such debts became fixed thereby to the United States ; and the subsequent transfer of stock in extinguishment of them was a void act, and' these debts constituted a part of the estate of the bank, which the defendant was bound to apply to the payment of the debt of the United States ; and not having done so, he is liable for those amounts.
And the counsel for the defendants made the following points :
1. That by the true construction of the bond, the obligors undertook for the acts of the corporation only, and not for their own conduct as individuals, or the conduct of any other individuals, not being the agents of the corporation.
2. That payment made to the sheriff, is no payment made to the bank, and that the defendant is not liable for any money received by the aforesaid Charles Jones, as sheriff, unless the same was paid over to the bank, or to the agents of the bank lawfully authorized to receive the same. ■
3. That the bank is not liable for any depreciation in the *money, *423 which the bank was compelled to receive by the judgment of the Maryland courts.
4. That the corporation had not the right to use the attachments which had issued from the district or circuit court; nor to order any process connected with the suit or judgment of the United States against the Bank of Somerset, and cannot, therefore, have been guilty of negligence or misconduct, by reason of not attempting to use the said attachments, or to issue process on said judgment.
5. That the defendant is not liable for any depreciation in the money, which the bank was compelled to receive by the judgment of the Maryland courts, unless the jury find that the bank was guilty of culpable negligence or misconduct, in prosecuting their claims in the courts of Maryland, instead of using the attachments issued from the district or circuit court of the United States.
6. That if the jury believe, that the property, from which the liens were removed, by payments of the Bank of Somerset, as stated in the evidence, has come to the hands and possession of the plaintiffs, and is worth more than such liens, and that the payment of such liens was made with an honest intention and view, for the benefit of the United States, then, the plaintiffs are not entitled to recover the amount so paid for such liens, as stated in the evidence.
1. That if the jury find from the evidence, that the taxes, officers’ fees, counsel fees and commissions, paid by the bank, were actually due, and that the said taxes were lawfully chargeable on the said property, when in the hands of the bank, as the agent of the United States, and that the said officers’ fees, and counsel fees and commissions, became due on account of suits instituted by the bank, as the agent of the United States, under the contract upon which this suit is brought, and that the said fees and commissions were lawful and reasonable ; that then the plaintiffs are not entitled to recover the amount so paid by the banks, of taxes, officers’ fees, counsel fees and commissions, unless the jury find that, in instituting the said suits, the said bank from negligence and misconduct violated its duty to the United States.
Upon these points too, the instructions of the court to the jury were requested. *The record states that the judges being opposed inopin- % ion on each of these questions, ordered them, on motion of the connsel for the plaintiffs, to be certified to this court for its decision ; and discharged the jury.
Some general propositions have been stated in argument, which bear upon all the points ; and which will be considered, before we proceed to apply them to the several specific questions which have been certified by the circuit court. The counsel for the United States insists, that by the act of 1818, the United States were empowered to enforce payment of the judgment they might obtain against the bank, in specie, by summoning the debtors of the corporation as garnishees, and obtaining judgments against them. The act provides, that in any suit thereafter instituted by the United States against any corporate body, for the recovery of money upon any bill, note or other security, it shall be lawful to summon as garnishees, the debtors of such corporation, who are required to state on oath the amount in which they stand indebted, at the time of serving the summons, for which amount judgment shall be entered in favor of the United States, in the same *424 manner as if it bad been due and owing to the United States. This act operates a transfer from the bank to the United States of those debts which might be due from the persons who should be summoned as garnishees. They become, by the service of the summons, the debtors of the United States, and cease to be the debtors of the bank. But they owe to the United States precisely what they owed to the bank, and no more. On the 9th of February 1819, the legislature of Maryland passed an act declaring that in payment of any debt due to, or judgment obtained by, any bank within that state, the note of such bank should be received. This act, so far as respects debts on which judgments have not been obtained, embodies the general and just principles respecting off-sets which are of common application. Every debtor may pay his creditor with the notes of that creditor ; they are an equitable and legal tender. So far as these notes were in possession of the debtor, at the time he was summoned as a garnishee, they form a counter-claim, which diminishes the debt due to the bank, to the *6601 exient tbaf counter-claim. But the residue becomes a *debt to -1 the United States, for which judgment is to be rendered. May this judgment be discharged by the paper of the bank ?
On this question, the court are divided. Three judges are of opinion, that by the nature of the contract, and by the operation of the act of Maryland upon it, an original right existed to discharge the debt in the notes of the bank ; which original right remains in full force against the United States, who come in as assignees ill law, not in fact; and who must therefore stand in the place of the bank. Three other judges are of opinion, that the right to pay the debt in the notes of the bank does not enter into the contract. A note given to pay money generally, is a note to pay in legal currency, and the right to discharge it with a particular paper, is an extrinsic circumstance depending on its being due to the person or body corporate responsible for that paper, which right is terminated by a transfer of the debt.
The counsel for the United States also contend, that the obligors are responsible in this suit for the act of any individual who has signed the bond, by which any portion of the estate of the bank may have been lost; and for the omission of the obligors to perform any act within their power, which might have enabled the corporate body to collect its debts in money of more value than its own notes. We do not think so. Whatever obligations a sense of right might have imposed upon them, as members of the corporation, the obligation imposed by the bond itself is measured by its terms. They do not undertake for their general conduct as individuals. They do not undertake for each other, as to any matter not expressed in the bond. They undertake that the bank shall perform the contract recited in the condition, and for nothing more. The bond does not stipulate that the obligors will do anything which may facilitate the operations of the bank in collecting its debts and performing its contract with the United States.
It has been urged, that they might have used the power to direct and manage the suit, so as to compel the debtors to the bank, by summoning them as garnishees, to discharge their debts in specie.
The United States have not required them to make *any use of the power to manage and direct the suit. Nothing is specified, nor is anything either demanded or undertaken on this subject. Were this court *425 to insert it, we should add a new term to the bond, and create an obligation which the parties have not imposed upon themselves. We should do something more than construe and enforce the contract.
In the state in which the record now appears, this question does not regularly arise. If the obligors were bound to use their power to direct and manage the suit, in the manner most advantageous to the United States ; if we could suppose, that the power was given, not for the benefit of the obligors who obtained it, but for the benefit of the United States, who agreed to surrender it unconditionally, for something else stipulated in the bond ; still this obligation, so to use the power, could not commence until the power was given. This we think is not shown by the record. The bond was executed to the United States, and this action is a proof that it was accepted. So far as respects the liability of the obligors, as sureties for the bank, the acceptance has relation to the date ; but so far as respects the liability to be created by a subsequent act of the obligee, this relation cannot be sustained. The actual time of acceptance becomes a subject of inquiry.
The record furnishes reason for the opinion, that the bond was not accepted at its date, on the 15th of July 1830. The acceptance being a fact in pais, we may look out of the bond for proof of it. The directors agree to bind themselves individually for the performance of the contract recited in the condition. This was required by the treasury department, in terms implying that all the directors should so bind themselves. The act incorporating the Bank of Somerset makes the board to consist of a president and ten directors ; the bond is executed by the president and seven directors. It remained some time for the signature of others, and was incomplete at its date. It might, without the slightest breach of faith, have been rejected by the secretary of the treasury ; and, as it did not conform to its original proposition, remained as an escrow, until approved by him. The record furnishes some evidence that is was not immediately approved. On the 26th of June 1821, the board of directors ordered, *“that William Done ^ proceed, as soon as convenient, to the seat of government, for the *- purpose of finally settling the arrangement entered into with the treasury department; and he is also requested to ascertain the state of the suit or suits brought by the United States against the bank and its garnishees, in the district court of Maryland.”
If then the power claimed for the obligees, to direct and manage the suit of the United States, was conferred by the mere operation of the bond ; it could not be conferred, until the bond was actually accepted, and the time of acceptance ought, for this particular purpose, to be shown. But this power is not conferred by the mere operation of the bond; it requires a distinct and independent act on the part of the government. “ The United States agree, upon receiving the bond of individuals, to assign the direction and management of the suit which has been instituted in the- district court of Maryland against the bank, to the individuals who thus enter into bond.” Till this authority was actually given, the attorney for the United States would have disregarded, and ought to have disregarded, any orders received from the obligors in the bond.
Suits were instituted by the bank against its debtors in the courts of the state ; by whose judgment the bank was compelled to receive not only its own notes, but the certificates of deposit held by its debtors. The counsel *426 for the United States insists, that the bank is responsible for the sums so received, in violation of its agreement to give a preference to the United States over other creditors. So far as this act was voluntary on the part of the bank, it is a violation Of the contract, for which its sureties are liable. But how far was it voluntary ? The bank possessed no other means of collecting its debts than through the medium of the state courts. It might, therefore, be necessary to resort to those courts, in order to avoid a total loss. The act of limitations, independent of those casual insolvencies which might occur, would have formed a serious deduction from that estate ; which it was their duty to preserve entire for the United States. The bank, perhaps, might have made, and sound morality required that they should have endeavored to make, new arrangements with the United States. It is x i not certain, that any arrangements which would remove ^difficulties J with which the whole transaction was embarrassed, were practicable. But, be this as it may, we perceive no other course which was prescribed by duty and by contract, with respect to their debts generally, than to sue in the state courts. With respect to those debts which were attached by the United States, the same division of opinion exists, as with respect to their payment in the notes of the bank.
We will now apply these principles to the particular points on which the judges of the circuit court were divided.
On the first question propounded by the counsel for the United States, and also on the first question propounded by the counsel for the defendant, this court is of opinion, that the obligors undertook for the faithful performance, by the president and directors, of the contract recited in the condition of the bond, on which the suit is instituted ; and not for their own conduct as individuals ; and that they are responsible for any failure on the part of the bank to perform that engagement.
On the second and sixth questions propounded by the plaintiffs, this court is of opinion, that the statement of the condition of the bank of the 11th of May 1820, which appears in the record, is evidence to be submitted to the jury, who are the judges, on the whole testimony, how far the estate of the bank was, at that time, sufficient to pay the debt due to the United States ; and if any part of that estate has been wasted or misapplied by the corporate body, or their agents, or has been appropriated unnecessarily to any purpose other than towards the debt of the United States, or is otherwise unaccounted for ; the defendant is responsible for such misapplication or waste, and for any sum not accounted for.
On the third and fourth questions propounded by the plaintiff's, this court is of opinion, that the obligors did not undertake by their bond, to call in the debts due to the bank. That duty was to be performed by the president and directors of the bank ; for whose faithful performance of it, the obligors are responsible.
The court does not perceive the application of the fifth question on the part of the plaintiffs to the cause, unless the president and directors of the bank be considered as the obligors, which idea is negatived in the answer *664.1 t0 ®rst question- *The obligors had no power to bring actions -* against the debtors of the bank, in the state courts.
On the seventh question propounded by the plaintiffs, this court is of opinion, that the attachments at the suit of the United States which had *427 been laid in the hands of the debtors.to the Bank of Somerset, prior to the date of the bond, fixed the debts in the hands of such debtors, as to the sum remaining due, after deducting the legal off-sets against the bank, then in the hands of such debtors. This court gives no opinion as to the money or paper in which the sum so remaining due was demandable.
The eighth instruction required by the plaintiffs ought not to be given as asked. The ninth question is answered in the opinions given by' this court on the preceding inquiries.
On the tenth question propounded by the plaintiffs, and the second propounded by the defendant, this court is of opinion, that the bank is liable for the money received by Charles Jones, as their collector; and the defendant is liable therefor, as their surety ; but that the bank is not liable for the money which came to his hands, as sheriff, unless the president and directors were guilty of negligence in using the appropriate means to draw it out of his hands in reasonable time.
On the eleventh question propounded by the plaintiffs, and the sixth propounded by the defendant, this court is of opinion, that it was the duty of the president and directors, to collect the debts due to the bank. In the performance of this duty, it might be necessary to purchase property pledged to the bank, which was subject to prior lions, and to relieve such property from its prior incumbrances, in order to avoid a total loss of the debt. This may have been advantageous, or may have been disadvantageous, to the United States. We think the transaction, with all its circumstances, ought to bo submitted to the jury ; and that the liability of the defendant can, in no event, exceed the actual loss sustained by the United States, in consequence of the bank having taken the property, by discharging the prior incumbrances, instead of suing the debtor in the state court.
On the twelfth question propounded by the plaintiffs, and *the seventh propounded by the defendant, this court is of opinion, that L the president and directors of the Bank of Somerset had no power over the judgment of the United States. They could, therefore, proceed only in the state courts; and were entitled to credit for such necessary expenses, as were incurred in such suits as it was prudent to bring.
On the thirteenth question propounded by the plaintiffs, this court is of opinion, that the propriety of allowing the commissions paid to William Done depends upon their reasonableness.
On the fourteenth and fifteenth questions, propounded by the counsel for the plaintiffs, this court is of opinion, that the instructions ought to have been given as asked ; except so. much of the fourteenth, as states it to havo been the duty of the obligors, instead of the president and directors, to ro-assert these debts ; and so much as supposes a power to proceed by the legal process of attachment in the name of the United States ; and except so much of the fifteenth as supposes a power in the defendant to apply the funds of the bank.
The court is of opinion, that the third, fourth, and fifth instructions moved by the counsel for the defendants, ought to be given as asked ; except so much of the fifth as submits to the jury the question on the power of the bank to use the attachments issued from the district court of the United States.
*428 All which is to be certified to the circuit court for the fourth circuit and district of Maryland.