Mr. Justice Walker delivered the opinion of the Court. In this case it is assigned as error that the circuit court im-r properly overruled the plaintiff’s demurrer to the defendant’s pleas. The ground of objection to part of them is, that they answer less than they purport in the outset to answer. It therefore becomes necessary to examine thebreachers in order to ascertain the truth of the objection. The action is debt on a collector’s bond, with the usual covenants to collect, pay over, &c. There are three breaches assigned. In the first, it is alleged that the collector failed to return a delinquent list as required by law: that he failed to make a proper settlement with the court at the time required by law: and that he was indebted to the county as such collector $2,868 87, and failed to pay the same over. Thare can be no doubt but that this breach is objectionable for duplicity. This court has repeatedly held that the breaches assigned in an action on a penal bond, are, in effect, so may distinct counts in a declaration. They are the gravamen and foundation of a recovery. And it is as much error to embrace two or more breaches in one assignment as it wuold so many distinct causes of action in one count in a declaration. Lyon v. Evans, 1 Ark. 367. Phillips & Martin v. Gov. use, &c., 2 Ark. R. 386. There were then in this assignment'three distinct breaches, upon either of which (if true) a recovery may be had. When therefore the pleas professed to answer the whole of the first assignment, it was not a sufficient answer to deny the indebtedness simply, leaving the breaches for having failed to return the delinquent list and to make a settlement with the court unanswered. The defendants contend that this defect in their plea should not prejudice them because they were led into it by the previous error on the part of the plaintiff, and that judgment should be rendered against the sufficiency of the declaration. In most instances, this would certainly be true; but in this case the ground of objection is duplicity, which can only be taken advantage of by special demurrer at common law, (1 Ch. Pl. 228,) and our statute expressly forbids that matter which is only cause for special demurrer at common law, shall be assigned as cause for demurrer, and that defects not assigned shall be amended by the court. Under this state of case, it is evident that the demurrer to the pleas did not relate back to the declaration, because if a demurrer could not have been interposed to the declaration, for additional reasons it could not by relation affect it. The statute requires that it shall be considered 'as amended. Thus considered, it presents three distinct assignments, which the pleas assume to answer, and forasmuch as they fail to do this, we must adjudge them insufficient and the demurrer, so far as the pleas were objectionable in this respect, should have been sustained, and Upon examination of the several pleas it will be found that in this respect they are all objectionable, except the second and third pleas of defendant Rives. The objection to them is not good. There is no allegation in either of the breaches that damages or costs were adjudged against defendant, nor that by law he was bound for either. We have now reached the main question at issue in this case. The defendant ip the fifth plea sets up a tender of Chicot county warrants, for the whole amount due said county for principal, penalty and interest. Which warrants, it is averred, were issued in 1843, under and by virtue of an act of the General Assembly, adopted and in force in 1839. The breach of covenant as alleged was lor failing to collect, account for and pay over the county revenue for the year 1847. Upon this state of case, it is objected, on the part of the plaintiff, that notwithstanding the express act of the Legislature to that effect, that warrants were not a legal tender in payment of the county revenue for the reason, as she alleges, that said act is in violation of that clause of the constitution of the United States which ordains that “no State shall make any thing but gold and silver coin a tender in payment of debts.” This question has repeatedly been discussed in the United States court, by several of our most distinguished jurists, and believing that no investigation which we could give the subject would free it from doubts, which their profound reasoning could not remove, we shall content ourselves by referring briefly to the positions which several of them assume, and apply the principles deduced from these and other authorities to the case before us. In the case of Ogden v. Saunders, 12 Wheaton 384, Chief Justice Mahshall, and several other judges held, that the act of the Legislature, which is in force at the time the contract is'made, does not enter into it, but that the contract derives its obligation from the act of the parties. Mr. Justice Washington, Mr. Justice Trimble and Mr. Justice Thompson held, in the same case, that the law of the State in which the contract is made, attaches to the ‘contract the moment it is made a qualification which becomes inseparable from it and travels with it, through all its stages of existence. In the case of Champanque v. Burnell, 1 Wash. C. C. Rep. 341, it was held that “laws which in any manner affect the contract, its construction, the mode of discharging it, or which control the obligation which the law imposes, are essentially incorporated in the contract itself. So, in the case of Burner v. Bank of Columbia, 9 Wheat. 586, the language of the court is, in effect, the same, and decides that we may look out of the contract’ to any known law or custom with reference to which the parties may be presumed to have contracted, in order to ascertain their intention and the legal and binding force and obligation of their contract. And to the correctness of the latter decisions, this court has heretofore, to a limited extent at least, subscribed. Be this rule however as it may, when applied to ordinay contracts, there is a class of contracts to which the rule will apply with increased force. They are such as are made and sanctioned under particular statutes : such as acts of incorporation, for instance, where the power to contract, the subject about which the contract may be made and the manner of discharging it, are all prescribed by law. In such cases, the contract is in many respects limited and controlled by the provisions of the act itself. Thus, where a bank is empowered to contract debts, to discount notes, &c., and the act also provides that the notes so discounted may be discharged by the bills issued by the bank, although the notes so discounted may purport upon their face to be payable in cash, yet, we apprehend, under the act authorizing the debtors of the Bank to pay their debts in bills issued by such bank, that a tender of such bills would be good in payment. In support of this position, even Chief Justice Marshall, who denied the correctness of the rule when applied to contracts generally, has given his assent. In the case of The United States v. Robinson, 5 Peters 659, the Bank of Summerset assigned to the United States certain of her notes, and the question arose as to whether (although the State of Maryland declared the bills issued by the Bank a good tender in payment of the debts due to the bank) as the notes had been assigned, the United States as as-signee was bound to receive them. The Chief Justice said, “on this question the court are divided. Three judges are of opinion that by the nature of the contract, and by the operation of the act of Maryland upon it, an original right existed to discharge the debt in the notes of the-bank, which original right remains in full force against the United States who comes in as assignee in law, not in fact, and who must therefore stand in place of the bank. Three other judges are of opinion that the right to pay the debt in the notes of the bank does not enter into the contract. A note given to pay money generally is a note to pay in legal currency, and the right to discharge it with a particular paper is an extrinsic circumstance depending on its being due to the person or body corporate responsible for that paper, which right is determined by the transfer of the debt.” It will be readily perceived in the case just cited, that the only matter of difference between the judges was as to the effect of the assignment, it being a cpn-ceded point by all of them that, as between the corporation and the debtor, the tender in paper would have been good. And such also was the decision of the Supreme Court of New York, in the case of Bank of Niagara v. McCracken, 18 John. R. 493. And in a very recent case from this State, Woodruff v. Trapnall, the Supreme Court of the United States held the pledge of the State to redeem the notes of the bank in payment of debts, was a standing guarantee, which embraced all the paper issued by the bank until the guarantee was repealed. The decisions in these latter cases, we apprehend, are made upon principles which must govern the case under consideration. The plaintiff in this suit is by the 1st sec., chap. 41, Dig., declared to be a corporation with power to contract, sue, &c. From the 1st to the 4th sec., ch. 138, power is conferred to levy and collect taxes, fines, &c.; from the 42d to the 47th section, same chapter, power is conferred to issue Treasury warrants; and by the last mentioned section it is declared “that all warrants drawn on the treasurer shall be paid out of any money in the treasury not otherwise appropriated, or out of the particular fund expressed therein, and shall be received in payment of all taxes, debts, fines, penalties and forfeitures accruing to the county.” Under this corporate power, the county levied a tax and issued her warrants, which the sheriff was bound by law to receive in payment of the county revenue. Having received them, shall we say that the county is not bound to redeem them in payment of her revenue ? If we declare that provision of the statute unconstitutional, which requires her to redeem her' warrants, can we uphold that clause of the statute which empowered her to issue them? or shall we not rather, in the language of Mr. Justice Thompson, say, that the law in force, when the contract was made, attached to it, when made, a qualification, which became inseparable from it, or, in the language of the court, in the case of Trapnall v. Woodruff, that the law is a standing guarantee that the corporation will receive her warrants in payment of all debts due her ? The case of Gaines v. Rives, 3 Eng. 220, is not reconcilable with the conclusion at which we have arrived. The court, in that case, in our opinion, failed to distinguish between a statute declaring warrants receivable in payment of debts generally and the particular case before it and then under consideration. Whatever may be the true rule in regard to general statutes upon this subject, we are decidedly of opinion that this statute is not in violation of that clause of the constitution, and was never intended to affect the subject of currency, but to affect a particular class of contracts made under authority of the act and in direct reference to this feature in it. There is no question but that if A. contract with B. to receive wheat of him in payment of a debt, wheat would be a good tender. So far from impairing the contract to require him to do so, it would be a gross violation of it to refuso to receive it in payment. This contract, though not made by an individual, is made by a corporation with definite prescribed powers, and when acting under or in reference to those powers, the corporation must be presumed to have adopted and acquiesced in all its provisions. We think the tender a good one. The judgment and decision of the Chicot Circuit Court, must therefore be reversed, and the cause remanded, with instructions to permit the parties to amend their pleadings, and for further proceedings to be had therein according to law.