SIMPSON & LEDBETTER *vs.* MATHIS, sheriff.

1. Where a bank was appointed a State depository, and gave bond as such, the law created a lien on the property of the principal and sureties from the time of the execution of such bond, and everybody was bound to take notice thereof.

2. Where, on a default made by the depository, execution was issued against it and the sureties on its bond, which was levied on certain land belonging to one of the sureties at the time of the execution of the bond and sold thereafter by him, and where the property was sold under the execution, and the fund arising from the sale was brought before the court, whereupon the vendees of the land, who had purchased from the surety, filed a bill, claiming that they had bought without knowledge of the lien, and had in good faith expended a certain sum of money in making permanent improvements on the land, the complainants could not recover, where it appeared that the amount realized from the sale under the execution was less than the value of the land alone, exclusive of the amount expended thereon by the complainants, thus showing that such expenditures did not increase the value of the land.

April 12, 1887.

Liens. Notice. State. State Depositories. Betterments. Before Judge Branham. Floyd Superior Court. September Term, 1886.

Reported in the decision.

Underwood & Rowell, for plaintiffs in error.

Dabney & Fouche', for defendant.

Blandford, Justice.

The Bank of Rome, wishing to become a State depository, entered into a bond, with C. G. Samuel and others as sureties, which was accepted by the governor, and the bank made a State depository. After this bond was taken, Simpson & Ledbetter, the plaintiffs in error, purchased from C. G. Samuel certain land. The Bank of Rome having defaulted, a writ of execution, under the law, was issued upon this bond, and was levied upon the land which had been purchased by Simpson & Ledbetter from Samuel. The property was sold, and the money went into the hands of the sheriff; and thereupon Simpson & Ledbetter filed their bill against Mathis, the sheriff, in which they claimed that they ought to be paid out of the funds in his hands the sum of $1,225, which they alleged they had expended in good faith in making permanent improvements on the land, and that they did not know at the time of the purchase that the State had any lien upon this property.

Certain questions were submitted to the jury by the court, viz. as to the value of the land when Simpson & Ledbetter purchased; what they gave for it; what was the value of the improvements they put upon it; and what it sold for. The jury found that the land was worth $3,400 when Simpson & Ledbetter purchased it; that they gave that amount for it; that they had put improvements on the land to the amount of $1,225; that the land sold for $2,800; and further found that Simpson & Ledbetter did

not know of this lien of the State at the time of the purchase. Upon that verdict, the court decreed that the amount in the hands of the sheriff be applied to the execution in favor of Colquitt, governor. This is excepted to; and it is insisted that, inasmuch as the plaintiffs in error did not know of the existence of this lien, they were not bound; that their purchase was good unless they had such knowledge, and unless it had been foreclosed before the purchase; and furthermore, that they were entitled to have, out of the money for which the land was sold, $1,225 expended by them in making improvements on the land.

1. We think they were bound to know of the existence of this lien; the law created the lien and expressly provided that it should exist, from the time of the execution of the bond, upon all the property of the principal and sureties; and everybody must take notice of this; the law gives them this notice. Such was the decision of this court in the case of *Seay vs. Bank of Rome*, 66 *Ga.* 609.

2. We are also of the opinion that Simpson & Ledbeter could not recover the value of the improvements, or the amount they expended in improvements, unless the land was thereby increased in value, and brought at the sale more than its value. The value of the land was proved to be $3,400; it only brought at the sale $2,800, less than the proved value of the same. Therefore we think that Simpson & Ledbetter's improvements did not increase the value of the land, and that the court did right to award the money in the hands of the sheriff to the execution in favor of the governor against the Bank of Rome and its sureties. Such was virtually the ruling of this court in the case of *McPhee vs. Guthrie & Co.*, 51 *Ga.* 83, in which this court held, WARNER, C. J., delivering the opinion, that where there was a mortgage on certain land, and a person had purchased that land after the mortgage was given and had made valuable improvements upon it, he would be entitled, upon the sale of the land, to the value of such improvements; provided the amount proved to have been

v 79-11

the value of the land at the time of his purchase, with interest thereon, be first applied to the mortgage *fi. fa.* He would only be entitled to the balance of the proceeds over and above the amount thus applied to the mortgage *fi. fa.* That decision was sustained in a subsequent case, 69 *Ga.* 804, in which it is alluded to with approbation. We think that this was a correct decision, and that it virtually controls this case.

Judgment affirmed.