## FIDELITY & DEPOSIT CO. OF MARYLAND v. HOWARD.

### No. 7104.

Circuit Court of Appeals, Fifth Circuit.

Dec. 7, 1933.

M. F. Goldstein, of Atlanta, Ga., for appellant.

Samuel H. Wiley, of Sparta, Ga., and Wallace Miller and Jas. A. Lowrey, Jr., both of Macon, Ga., for appellee.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

This appeal seeks to assert the validity of the Georgia statutory lien for deposits of state funds against the property of an insolvent national bank which was a state depository. By a statute passed in 1876, now section 218 of the Civil Code of Georgia, it is provided as to the state treasurer's bond: "And all the property of the treasurer to the full amount of said bond, and the property of the securities to the amount for which they may be severally bound, shall be liable for the faithful performance by the treasurer of the duties of his office, from the date of the execution of said bond; and a lien is hereby created in favor of the State upon the property of the treasurer to the amount of said bond, and upon the property of the securities upon his said bond to the amount for which they may be severally liable, from the date of the execution thereof." In 1879 another act was passed, found in section 1249 et seq. of the Civil Code 1910, as amended, providing that the Governor might appoint solvent banks of good standing and credit to be depositories for state funds for terms of four

years without salary, and by section 1252 said depositories shall before entering on the discharge of their duties by their proper officers execute a bond with good and sufficient sureties to be fixed and approved by the Governor, "Said bond shall be conditioned for the faithful performance of all such duties as shall be required of them by the General Assembly or the laws of this State, and for a faithful account of the money or effects that may come into their hands during their continuance in office. Said bond shall be filed and recorded in the executive office * * * and said bonds shall have the same binding *. * * effect as the bond required by law to be given by State treasurers, and, in case of default, shall be enforced in like manner." The words last quoted mean that the depository's bond, like the treasurer's, is a lien on the property of the principal and sureties from its date. Seay v. Bank of. Rome, 66 Ga. 609; Colquitt, Governor, v. Simpson, 72 Ga. 501; Simpson & Ledbetter v. Mathis, Sheriff, 79 Ga. 159, 3 S. E. 646. These early cases also establish that the lien extends to all property, including money and choses in action when they are in a receiver's hands, and that everyone is bound to take notice of it. In the case of Colquitt, Governor, v. Simpson, a surety on a bond dated November 18, 1879, sold land on January 10, 1881, to purchasers who claimed ignorance that he was such surety. On April 1, 1881, a fi. fa. was issued by the Governor on the bond and levied on the land. The purchasers were held charged with notice and their land was held subject to the lien. The lien therefore exists before insolvency and before default of the depository, and adheres to realty aliened to others. As to choses in action it is held the lien does not prevent the exercise of the ordinary rights of set-off. State v. Brobston, receiver, 94 Ga. 95, 21 S. E. 146, 47 Am. St. Rep. 138. The statutes have been so construed to this day. Standard Accident Ins. Co. v. Luther Williams Bank & Trust Co., 45 Ga. App. 831, 166 S. E. 260. National banks are expressly made eligible to appointment by section 1253; and by an act passed in 1893, section 1256, there is a provision requiring a national bank to give bond in double the sum to be deposited although the general requirement is only that bonds shall cover fully the amount to be deposited; and a provision that all the state depositories may make bond by a deposit with the state treasurer of state or United States bonds instead of by a personal bond.

Under these statutes so construed the Governor on July 6, 1928, appointed the Hancock National Bank of Sparta, Ga., a state depository to receive state taxes, expressly referring to the act af 1879 and requiring a bond of $10,000. On July 12 the board of directors of the bank accepted the appointment and directed that the bond be made. A personal bond with surety was executed accordingly, the bond making explicit reference to the act of 1879, and being conditioned as the act requires. On the failure of the bank, May 23, 1932, it had on deposit of state's money $6,221.73, which on demand was paid to the state by the surety, Fidelity & Deposit Company of Maryland, the state assigning its claim against the bank. Relying both on this assignment and on its right of subrogation, the surety brought a bill to assert the statutory lien against the assets in the hands of the bank's receiver. On motion the bill was dismissed as respects the lien, but a claim as general creditor was decreed. The surety appeals.

It is not denied that the surety has all the rights that the state had against the bank's property. The contention is that the state can have no such lien as against a national bank, and particularly none after its insolvency, since its assets are required by 12 US CA § 194 to be paid ratably to all creditors. It will be noticed that the lien asserted is not one involuntarily imposed by the state law, but created by the contract of the managing authorities of the bank. The bank was not compelled to accept the appointment, nor, having accepted, to give a bond carrying the statutory lien, but might have made a special pledge instead. It elected to make a bond under the statute and by a reference to the statute established contractually the lien as clearly as if it had been set forth by express. words. The true operation of the statute is to sanction and make lawful so far as it could such a contract. The real question is whether by federal law the contract is forbidden to a national bank.

█ It is first objected that such a bank, which constitutionally exists only because it is a fiscal agency of the federal government, cannot thus agree to act for the state government, nor bind itself to perform "all such duties as are required of it by the General Assembly." No duties, however, have ever been required except to receive and account for the public moneys, which is a banking function, and none are suggested which are incompatible with duty to the United States or to the banking public. It has been held that a state depository is not a state officer but only an agency to keep the public funds.

Colquitt, Governor, v. Simpson, 72 Ga. 502. For fifty years national banks have served as such, and no conflict of duties has appeared.

■ It is next objected that the lien on all property of the bank when a bond is given is beyond the bank's powers because it disables the bank from functioning in that it cannot dispose of its lands unless the purchaser will rely on its warranty of title, and that even the money paid out and the stocks, bonds, and notes transferred from it in the course of business would be incumbered with a lien which would prevent their acceptance. This objection applies to state as well as national banks. It is forcibly stated by Judge Barrett in Re Blalock (D. C.) 31 F.(2d) 612, and it was there denied that the lien held good on money, notes, and accounts transferred by the bank in due course of trade. We think that conclusion correct. The Legislature could not have intended to tie up the commercial assets of the banks which become depositories so that they could do no business. Liens on such ambulatory property are usually not effective until in some way it has been seized and sequestered, as by garnishment or by the appointment of a receiver therefor. In the early case of Miller v. Race, 1 Burr. 452, 1 Smith's Leading Cases 516, the question arose whether one who takes a stolen bank note in due course of trade gets a good title contrary to the general rule that no one can pass a better title than he himself has. Lord Mansfield held the title good and gave such reasons as these: "Upon the general course of business and from the consequences to trade and commerce which would be much incommoded by a contrary determination;" "on account of the currency of them;" "it is necessary for the purposes of commerce that their currency should be established and secured." On similar reasons it should be supposed that the money, notes, stocks, and bonds which are the stock in trade of a bank were not intended to be deprived by the state's lien of their commercial usefulness. An analogy may be found in the Georgia mortgage upon a stock of merchandise the lien of which, though known to the customer, is released from goods sold in the due course of trade and attaches to others acquired in their place. So a Georgia judgment which is a general lien against the defendant's property from its date does not affect the transfer in good faith of money, corporate stocks, or choses in action until they are seized by levy, garnishment, or receivership. A mortgage of rents or income from property is not effective until proceedings are begun to sequester them. Taxes in Georgia are a general lien against

all the property of the taxpayer from the accrual of the tax, so that in this state from the first of each year when the taxes are returned until the end of the year when they are paid, every item of property in the state is necessarily under a tax lien, but business is not stopped thereby. Certain it is that for fifty-three years the banks, both state and national, have acted as state depositories under this lien without any practical embarrassment. Indeed, it is common knowledge that they have advertised on their street signs and letterheads that they are state depositories as an evidence of their soundness and credit. The state courts have asserted the lien against cash and choses in action when captured by a receivership (Seay v. Bank of Rome, Standard Accident Ins. Co. v. Luther Williams Bank, supra), but never have asserted it as to commercial assets transferred in due course of business.

This construction of the operation of the lien also answers the objection that a national bank would thereby be prevented from selling its stocks as required by 12 USCA § 83, or from pledging bonds or other securities to the United States for public deposits under section 90, or from securing their circulating notes under section 101. As held in Re Blalock, supra, pledges and sales of choses in action in due course of business are freed from the lien.

■ The securing of public deposits we have held to be within the banking powers of a national bank. Pottorff v. El Paso-Hudspeth Road District (C. C. A.) 62 F.(2d) 498. Deposits of money of the United States must be secured. 12 USCA § 90. In Cook County National Bank v. United States, 107 U. S. 445, 2 S. Ct. 561, 565, 27 L. Ed. 537, it is said: "The amount of security which the secretary may thus require has no limit but his own judgment as to its necessity. * * * The government can thus always have security, limited in amount only by the judgment of the secretary of the treasury, for public moneys deposited with any national bank." The bank, therefore, cannot only give him its best securities but all it has. The creation by means of a bond of a lien against the entire assets of a state bank for a debt to the United States was upheld in United States v. Robertson, 5 Pet. 641, 8 L. Ed. 257. That this was the effect of the decision is pointed out in the dissent at its conclusion; and this effect of the decision was again asserted in Planter's Bank v. Sharp, 6 How. at page 323, 12 L. Ed. 447. If the United States may have as security the bank's entire assets, we see no reason why a state may not have a

contract lien on them. The Comptroller of the Currency for fifty years has approved the receipt by national banks in Georgia of state deposits under this contract for a general lien on all property. With knowledge presumably of it the Congress on June 25, 1930, so amended 12 USCA § 90 as to provide: "Any association may, upon the deposit with it of public money of a State or any political subdivision thereof, give security for the safe-keeping and prompt payment of the money so deposited, of the same kind as is authorized by the law of the State in which such association is located in the case of other banking institutions in the State." We regard this legislation as declaring and defining the power to secure such deposits rather than as creating it. It certainly does not prohibit the kind of security long authorized by the laws of Georgia, and given by the banks in Georgia. But after all a sufficient pledge of specific assets does the same harm to general creditors as if more assets or all had been pledged. In either case the secured creditor gets fully paid and general creditors get the remainder. A deposit of public funds increases the assets of the bank by the amount of the deposit, and any sufficient method of security merely returns that increase according to agreement. We cannot say that the voluntary creation of a general lien provided by the Georgia statute is beyond the power of a national bank.

■ But it is urged that the lien can have no operation in case of insolvency because of 12 USCA § 91, prohibiting preferences made in view of insolvency, and section 194 requiring the payment of ratable dividends to creditors. These statutes do not affect liens validly existing against the bank's property before receivership. They were considered in Scott v. Armstrong, 146 U. S. 499, and on page 510, 13 S. Ct. 148, 151, 36 L. Ed. 1059, it is said: "Liens, equities, or rights arising by express agreement, or implied from the nature of the dealings between the parties, or by operation of law, prior to insolvency and not in contemplation thereof, are not invalidated." And again in Earle v. Pennsylvania, 178 U. S. 449, at page 454, 20 S. Ct. 915, 917, 44 L. Ed. 1146: "The right thus acquired by the service of the attachment was not lost by the suspension of the bank and the appointment of the receiver. The assets of the bank passed to the receiver burdened, as to the interest that Long had in them, with a lien in favor of the plaintiff in the attachment which could not be disregarded or displaced by the Comptroller of the Currency." The lien here involved, as we have pointed out, arises by a voluntary contract and exists from the date of the bond of which it forms a part. In spite of its generality it is not a priority arising on the insolvency of the bank. Insolvency is nowhere mentioned in the statutes defining it. It is true that the lien seldom needs assertion unless insolvency occurs, but that is true of all security. The lien on all property of the signers of the bond may be compared to the tax lien on all property of the taxpayer. That such tax liens are true liens and not priorities on insolvency we held in enforcing them against assets in bankruptcy. In re Brannon (C. C. A.) 62 F.(2d) 959. The preference under state laws which was attempted to be enforced against bank assets in Davis v. Elmira Bank, 161 U. S. 275, 16 S. Ct. 502, 40 L. Ed. 700, was a priority arising only on insolvency, indeed a part of the state statutes for administering an insolvent bank, and was in conflict with section 194.

■ Finally, attention has been called to the provision of the act of 1893, Civ. Code 1910, § 1256, requiring double bond of a national bank as a state depository. It is argued that this difference was made because the Legislature knew the state could have no lien against national banks. We have been unable to find sufficient support for the proposition that the state can have no such lien, and none at all for that being the reason for the difference made. The reason may have been that the state has no power to examine national banks as it does state banks. The discrimination seems indeed not to be enforced, for this bank under a bond of $10,000 had a deposit of over $6,000 on May 23d, and it may be judicially noticed that taxes in Georgia are due in December and collections are at their flood tide in January.

The sum of the matter is this: The state with an express reference to its statutes making the bond a general lien from its date offered to deliver money to the bank if the bank would give a $10,000 bond; the directors accepted the offer and the bank gave the bond, again referring to the statute, and received the money. We find no adequate reason why the lien established by the law and by the agreement was not good from the date of the bond, and is not enforceable against the bank's property of all kinds now in the receiver's hands.

We reverse the dismissal of the bill as respects the lien, and remand the cause for further proceedings not inconsistent with this opinion.