Nash, C. J.
dissentimte.—I agree with my brethren in the first two propositions conveyed in their opinion. First, that by the act incorporating the bank of Fayetteville, power was granted to issue notes or bills of any denomination, from one dollar to any amount; and secondly, that the act of 1830 has no bearing upon the question submitted to the Court in this case. The first proposition is true, because the end and object of the grant was to establish a bank of issue as well as of deposit; and the second, is true, because by the caption of the act of 1830, as originally passed, the object and intent of the Legislature is plainly set forth to be, to prevent the circulation, in this State, of bills issued by banks out of the State, of a less denomination than five dollars. And the fact, that in the Revised Statutes, the act is brought forward without the caption, can make no difference, as the caption is no part of the act, but simply a key to unlock the intention of the enactors of it. I do not concur in the opinion, upon the effect and operation of the act of 1854, upon the right of the bank of Fayetteville to issue notes or bills of the denomination of one dollar. It is not my purpose to go into an elaborate investigation of the subject, but to content myself with the statement of a few principles, and a reference to a few cases, to sustain my views.
It is a sound rule, that where an act is passed by the Legislature, susceptible of two constructions, one in conformity with their constitutional powers, and another in conflict with them, the former is to be taken as the true construction, rather than the latter. A due regard to a co-ordinate branch of the government requires such a rule. Was it the intention of the Legislature, to be gathered from the act itself, in passing the act of *463 1854, to deprive the hank of Fayetteville of the power to issue one dollar bills ? My impression is that it was not. In the first place, it is not to be presumed that the Legislature was disposed to do that indirectly, which they felt they had no power to do directly. This would be doing great injustice to that body. Again, the bank of Fayetteville was the only bank in the State whose charter authorised the issue of notes of that denomination. If it was, then, the intention of the Legislature to withdraw that power, an act, plain and simple in ■ its phraseology, expressly repealing so much of the act incorporating the bank as conveyed that power, would have been sufficient, and would have left no doubt as to the intent of the Legislature. This they have not done, but passed a general act. My opinion is, that the Legislature did not intend to interfere with rights already vested, but those which might thereafter be called into existence by the future incorporation of banks. This construction leaves the act of 1854 free to act, untrammelled by the constitutional objection raised to it. If, however, I am mistaken in this view of the act of 1854, and it was the intention of the Legislature to repeal so much of tire charter of the bank of Fayetteville as confers upon the corporation the right to issue one dollar bills, I am constrained to say, I deem the act, so far, unconstitutional, as being a plain violation of the 10th section of the first article of the constitution of the United States, which, among other restrictions upon the power of the States, forbids the passing of any law impairing the obligation of contracts. This clause of the constitution was intended to restore public confidence, shaken by tire course pursued in several States at the close of the war of the Eevolution, and to establish the great principle, that contracts should be inviolable. Under its aegis, it was intended that all our institutions, commercial, literary, charitable and religious, should find safety from the fluctuations of public opinion and political strife. It embraces all contracts, whether made by the State with one of its citizens, or one made between private individuals; whether executed or executory. It is not questioned but that a grant made by the *464 State is a contract under the constitution, and protected by it. In the celebrated case of Fletcher v. Peck, 6 Cranch 87, the Court declare, that where a law is in the nature of a contract, and absolute rights had vested under it, the repeal of the law cannot divest those rights, nor destroy or impair them. The same principle is declared in the case, the State of New Jersey v. Wilson, 7 Cranch 164. In Tenent v. Taylor, 9 Cranch 43, it was declared, that a legislative grant, competently made, vested an indefeasible and irrevokable title, and repudiates the doctrine, that such a grant was revokable in its nature, and held only dwante bene plácito.
In the case of Dartmouth College, 4 Wheaton 518, the whole doctrine arising under this restriction in the Constitution of the United States, was most elaborately argued, and received the most clear and practical exposition by the Court. Chancellor Kent, in the 1st vol. of his commentaries, p. 418, observes : “ The decision in that case did more than any single act proceeding from the authority of the United States, to throw an impregnable barrier around all rights and franchises derived from the grant of the Government.” Impregnable no longer, if held de bene plácito of the legislature. The question again came before the same tribunal in the case of Green v. Biddle, 8 Wheaton 1, in which the Court declare, that the objection to a law, on the ground of its impairing the obligation of a contract, can never depend upon the extent of the change. Any deviation from its terms, however minute, or apparently immaterial in its effect upon the contract, or rrpon any part or parcel thereof, impairs its obligation. Thus in Woodruff v. Trapnell, 10 How. U. S. Rep. 190, it was held that an act of the Legislature of Arkansas, repealing a clause of a previous act chartering a bank, in which the State was the sole stockholder, and in which it was stipulated, “ that the bills and notes of said institution, shall be received in “ payment of debts due the State,” violated the charter, as impairing the contract between the State and the holders of the bills. The same principle was recognized in Pauf v. Drew, 10 How. 218, and in Trigg v. Drew, do. 224, In the *465 Planters Bank v. Sharp, 6 How. 301, the Court decide, that where a bank is chartered with power to acquire a/nd dispose of goods, chattels and effects, of what kind soever nature and quality, and to discount bills and notes, that a subsequent act passed by the Legislature prohibiting any bank from transferring by endorsement or otherwise, any note or bill receivable, or other evidence of debt, was void, as impairing the obligation of the contract contained in the charter previously granted. Any law, then, which enlarges, abridges, or in any manner changes, the intention of the parties, resulting from the stipulations in the contract, necessarily impairs it; nor can the manner o^ degree in which the change is effected, at all influence the result. Nor does it make any difference whether the contract is express or implied; each is equally under the protection of the constitution. Story’s Com. on the Con., ss. 700, 703.
By the charter of the Bank of Fayetteville, it was authorised to issue notes of the denomination of one dollar and upwards ; by the act of 1854, if the construction given to it by my brethren be correct, that privilege is taken from it. It, therefore, without the consent of the bank, changes an important feature contained in the charter, and revokes a power granted and guaranteed to the corporation. A more palpable violation of a contract, to my mind, cannot well be perceived. My brethren, however, hold, that though this be so, yet the act of 1854 is not unconstitutional. And this is founded upon the position that the power to regulate the currency of the State is a sovereign power, which no Legislature has a right to part with. To this proposition I do not assent; grant it, and every banking corporation in the state, holds its charter at the will of the Legislature. If, under the plea of regulating the currency of the State, the Legislature can withdraw from the corporation the power granted to issue bills of a particular denomination, the same plea will justify them in forbidding the issuing of any bills. Having granted to the bank of Fayetteville the right to issue bills of the denomination of one dollar, the same principle will justify them in forbiding *466 them to issue bills of a less denomination than of ten, twenty, fifty, one hundred, or any other large denomination. So that, in fact, it would be in the power of the Legislature to convert every bank in the State simply into banks of' deposit. The banks of the State, and of Cape Fear, have the right expressly given them to issue bills of any denomination not under three dollars ; what is to prevent the Legislature from withdrawing this right, and forbidding those banks from issuing any bills under fifty or a hundred dollars, or any bills at all but certificates of deposit. The only difference between the case of these latter banks and that of the bank of Fayetteville, is that the restriction upon them is expressed. This surely can make no difference in the exercise of the power now claimed for the Legislature, which necessarily explodes the idea, that banking charters are contracts. They are simply Legislative acts, subject to the control of the Legislature, and liable to be recalled whenever that body deems it expedient so to do. But numerous decisions of our courts of justice, and opinions of our ablest jurists, sustain the idea that they are contracts within the constitutional power of the Legislature to make ; if so, they ate under the protection of the article of the Federal Constitution before cited. To coin money is an act of Sovereignty; to establish banks, is an act of ordinary Legislation. To do the former, or to regulate its value, is not within the ligitimate power of the Legislature. The people of North Carolina, in solemn convention, have transferred that sovereign power to the Government of the United States. Bank bills are not money, but the representative of money; nothing more than promissory notes ; differing from those made by a private individual, only in being issued by a corporate body; no one is compellable to receive them, and they are current only by common consent, not by law. Whore the Legislature creates a corporation, it is in their power to lay the corporators under any restriction they think the public interest requires ; but having made the compact, it is no more in their power to alter it, without the consent of the’ corporation, than they can alter one made by and between private *467 individuals. That the power to issue bills of the denomination of one dollar, is felt by the Bank of Fayetteville to be important and valuable, is evidenced by the care they have taken in the defence of what they consider their rights. As it regards the policy of the power granted, I have nothing to say; nor have I any concern with the motives which induced the Legislature to grant it to the bank of Fayetteville and deny it to other banks. It is sufficient for me that they have' done it. •
I have treated this question as if the bank of Fayetteville was, by proper proceeding, the defendant here. To grant to the corporation power to issue bills of the denomination of one dollar, and to make it penal, by a subsequent act, for any one to pass or receive them, would indeed be a sheer mocking of j ustice. The defence rests upon the power of the bank to issue them after the act of 1854.
In my opinion, the judgment below ought to be reversed, and a venire de novo granted.
Per Curiam.
Judgment affirmed.