[PHILADELPHIA, MAY 3RD, 1839.]

## KNOWLES and Others *against* LORD and Others.

4 Wh 500
f 34 SC ¹100                    IN ERROR.

1. In replevin for six cases of prints, containing a specific number of pieces, and property-bond given, reciting the tenor of the writ, the return was "replevied, summoned, and claim, property-bond given." *Held*, That evidence was not admissible to show that the number of pieces actually replevied, was less than that mentioned in the writ, and that divers pieces of goods mentioned in the writ of replevin, had been sold in the course of business, before the issuing thereof.

2. Assignees for the benefit of creditors, stand in no better situation than the assignors. Neither they nor the creditors whom they represent are purchasers for a valuable consideration, within the doctrine in favour of such purchasers; and this even though the assignment contain a stipulation for release of the assignors by certain of the creditors, who execute a release accordingly.

ERROR to the District Court for the City and County of Philadelphia.

This was an action of replevin brought by the defendants in error, merchants in New York, for six cases of goods, sold by them on the 6th of April, 1832, to Knowles, Schroeder and M·Calla, then trading in Philadelphia.

On the 1st May, 1832, Knowles, Schroeder and M'Calla, executed a voluntary assignment of all their property to Gershom W. Lambert and Abner Pollard, Jr. in trust to pay the holders of certain notes and drafts mentioned in a schedule annexed, amounting to twenty four thousand six hundred and thirty-four dollars thirty-one cents; and also certain specified amounts due to Gershom W. Lambert, by the assignees; secondly to pay certain notes mentioned in an annexed schedule, should the same remain unpaid by the drawers thereof, and for which the said Lambert was in any manner responsible, and also to indemnify him for all responsibility for the rent and covenants in the lease of the store where the business was carried on; thirdly, to pay three notes of Edward Schroeder, one of the assignors; and fourthly to divide the surplus rateably among all such other creditors of the assignees, as should execute a full release of their claims on the assignors on or before the 15th day of June, 1832.

This action was brought to recover the goods sold, on the ground that the purchase was made without intention to pay for them, and vested no title in the assignors.

(Knowles v. Lord.)

The writ of replevin was for four cases of prints, containing each fifty pieces; one case of prints, containing forty-three pieces; one case of furniture prints, containing sixty-five pieces; value eighteen hundred dollars, or thereabouts.

The sheriff's return was as follows: " May 15th, 1832. Replevied, summoned, and afterwards claim property-bond given."

The condition of the claim property-bond which was given on the 17th of May, 1832, by the assignees Lambert and Pollard, to the sheriff, was in the usual form : it recited the tenor of the writ of replevin, setting forth the goods as described therein ; and that the said Lambert and Pollard had claimed property in the said goods ; wherefore delivery of the said goods could not be made.

On the trial before PETTIT, (President,) on the 10th of Feb. 1838, the officer who executed the writ of replevin was called by the defendants for the purpose of proving, notwithstanding the sheriff's return, that the number of pieces actually replevied was much less than the number mentioned in the writ.

The books of Knowles, Schroeder and M'Calla were likewise offered to show sales of some of the goods before the issuing of the replevin. This evidence was objected to, and the objection sustained by the Court, which formed the first and second errors assigned.

Two releases signed by certain creditors of the assignors under the stipulation in the assignment, one dated the 1st June, 1832, the other the                  1832, were given in evidence.

The Court was requested by the defendants to charge the jury that the assignees being *bona fide* purchasers for a valuable consideration for the other creditors, the plaintiffs are not entitled to recover. The learned judge, however, instructed the jury that the assignees under the circumstances of the case, were in no better situation than the assignors, and that if the plaintiffs could recover against Knowles, Schroeder and M'Calla, the fact of the assignment would make no difference : this formed the third of the errors assigned, which were as follows :

" 1. That the Court erred in rejecting the evidence of E. K. Collins, offered to show that the number of pieces of goods actually replevied, was less than that mentioned in the writ of replevin.

2. That the Court erred in rejecting the books of Knowles, Schroeder and M'Calla, offered to show the sale of divers pieces of the goods mentioned in the replevin, before the issuing of the writ.

3. That the Court erred in charging the jury that the assignees stood in no better situation than Knowles, Schroeder and M'Calla, in regard to their goods."

(Knowles v. Lord.)

Mr. *M'Call*, for the plaintiffs in error.

1. The evidence was offered, not to contradict the return of the sheriff, but only to apply it to its real subject-matter. The return is indefinite, and applies as well to four cases of goods as to five. No averment shall be admitted which is directly against the sheriff's return; but here the proof is perfectly consistent with it. The distinction is between averments directly against, and those which stand with the return. The former are inadmissible, the latter may be shown. *Dalton, ch.* 42, p. 189. 7 *Hen.* 7, pl. 14. 5 *Edw.* 3, 1. 20 *Edw.* 3, 11. *Vin. Abr. Return*, vol. 19, p. 198, pl. 20. *Dolan* v. *Briggs*, (4 *Binn.* 496,) is a stronger case than the present, and ought to govern this. There the marshal was commanded to sell a schooner, with all her tackle, apparel and furniture, or so much thereof as might be necessary. He returned that he had sold the schooner, her tackle, apparel and furniture to Dolan; and the deputy-marshal was allowed to prove that certain sails were expressly excepted at the time of sale and not sold. "The return" says C. J. TILGHMAN, "did not particularize the articles which were sold, and it might very well consist with it that part was sold and part not sold." So here it may very well consist with the return, that four cases of goods were replevied and not five. To which cases may be added, *Commonwealth* v. *Craig*, (1 *Serg. & Rawle*, 23.) *Meredith* v. *Shewell*, (1 *Penn. Rep.* 496.)

2. Then as to the other point: the assignees are purchasers for a valuable consideration for the other creditors. The fact of the release differs this case from *Williams* v. *Twelves*, (3 *Wharton*, 485.) The releasing creditors have lost their reclamation. They have parted with their claims on the faith of these very goods; and if this is not a valuable consideration, it is difficult to conceive what a valuable consideration is. The Court cannot say that the release was not signed on the credit of these very goods. It is impossible to draw a distinction founded in reason between a consideration of money paid at the time, and of a valuable claim released at the time. Then even if the sale were fraudulent, the goods cannot be reclaimed in the hands of *bona fide* purchasers. This is a well established limit to the right of the vendor to follow his goods. It is indicated in *Mackinley* v. *M'Gregor*, (3 *Wharton*, 396,) and fully laid down in *Durell* v. *Haley*, (1 *Paige*, 492.)

Mr. *Randall* and Mr. *Scott*, contra.

The evidence offered went to contradict the return. The return is a short one, according to our practice, but if written out, the contradiction is apparent. Moreover the claim property-bond which recites the description in the writ, is a complete estoppel to the obligors. If the defendants were injured by a false return, their remedy was against the sheriff. If the objection had been taken at an earlier stage of the proceedings, the plaintiffs might have taken

(Knowles v. Lord.)

the proper measures; but after being thus lulled to sleep by the silence of the plaintiffs, they ought not now to be turned round to an action against the sheriff. They cited *Watson on Sheriff*, p. 72. *Shaw* v. *Simpson*, (1 *Ld. Raym*, 184.) *Hoffman* v. *Coster*, (2 *Whart.* 453.) Are assignees for creditors in any case purchasers for a valuable consideration? We submit they are not. Money must be paid at the time to constitute such a purchaser. The consideration of a precedent debt is not sufficient. There are many authorities which bear on this point. They cited and commented on *Root* v. *French*, (13 *Wend.* 570.) *Mackie* v. *Keans*, (5 *Cowen*, 555.) *Coddington* v. *Bay*, (20 *Johns.* 639.) 5 *Johns. Ch. R.* 54. *Petrie* v. *Clark*, 11 *Serg. & Rawle*, 377.) *M'Carty* v. *Springer*, (3 *Rawle*, 159.) *Dickenson* v. *Tillinghurst*, (4 *Paige*, 215.) Then does the release make any difference? It would be a very dangerous doctrine to hold that a fraudulent debtor might by stipulating for a release give a sanction to his previous frauds, and enable the releasing creditors to acquire a title which he himself had not. Here the result of the estate has shown that the releasing creditors will get nothing; the whole estate being swallowed up by the preferences in which Lambert was interested. Moreover the releases were not executed until some days after the issuing of the replevin, which was *lis pendens*, and notice to the releasing creditors.

Mr. *J. R. Ingersoll*, in reply.

The debts of the releasing creditors being extinguished, it is the same in effect as if money had been paid at the time. *Walker* v. *Geisse*, (*ante* p. 252,) recently decided, shows this. [KENNEDY, J. *Walker* v. *Geisse*, did not touch a voluntary assignment.] It did not. But it repudiates a distinction like that asserted on the authority of the New York decisions, between the effect of an antecedent debt, and money paid at the time. And even in that state, the recent case of *Smith* v. *Van Loan*, (16 *Wend.* 661,) shows that those authorities do not apply where any thing is parted with at the time of the transfer. In Connecticut, the doctrine of those cases has not been recognized. *Brush* v. *Scribner*, (11 *Conn. Rep.* 359.)

The evidence offered did not contradict the return, which was ambiguous, and applied as well to five as to six cases of goods. If the sheriff had been sued by Knowles for a false return, could he not have said that his return was strictly true, that it meant he had taken four cases only, quite as conclusively as that he had replevied five. Suppose a capias against three defendants, and two taken, could not the third, on a return of *cepi corpora*, show that he was not found? It is argued that the property-bond makes a difference. How so? The return must stand by itself. At first, the property-bond is only evidence of a fact, independently of the return, and if you have a right to look to it as proof, you have the same right to look to the parol evidence which was offered.

(Knowles *v.* Lord.)

The opinion of the Court was delivered by

Sergeant, J.—It is contended, that the Court below erred in rejecting the evidence offered by the defendants, to show that the number of pieces of goods actually replevied, was less than that mentioned in the writ of replevin, and also to show the sale of divers pieces of goods mentioned in the writ of replevin, before the issuing of the writ. We are of opinion, however, that this evidence was properly rejected. It went to contradict the sheriff's return to the writ of replevin. The writ was for four cases of prints, containing each fifty pieces; one case of prints containing forty-three pieces; one case of furniture prints, containing sixty-five pieces; value eighteen hundred dollars, or thereabouts. The sheriff's return was, 'replevied, summoned, and afterwards claim property-bond given.' It is a well settled principle, applicable to every case, that credence is to be given to the sheriff's return; so much so, that there can be no averment against it in the same action. *Dalt.* 189, 190, 191. *Rolle's Ab. Return, O. Wats. Sheriff,* 72. A party may make an averment consistent with the sheriff's return, or explanatory of its legal bearing and effect, where the return is at large. 7 *Hen.* 8, pl. 14. 5 *Ed.* 3, pl. 1. 19 *Vin.* 198. *Dolan* v. *Briggs,* (4 *Binn.* 496,) but he cannot aver a matter directly at variance with the facts stated in return, and contradictory to it, and showing it to be false. If a party be injured by the false return of the sheriff, his remedy is by action on the case against the sheriff who makes it. Thus if the sheriff returns, that the goods are · eloigned, the plaintiff may have a withernam, and the defendant cannot plead, either that he did not eloign, or that the beasts were dead in the pound, for that is contrary to the elongata returned by the sheriff, and not to be denied. *Gilb. Replev.* 98. 1 *Dall.* 439. The evidence offered, went not only to contradict the sheriff's return, but also the act of the defendants, in conformity with it, of claiming the property in the goods mentioned in the writ of replevin, and giving bond to deliver up these goods, if the property in them *should be adjudged not to be in* the defendants. This was an unequivocal admission, that they had the goods, and that the sheriff either had replevied, or would replevy them, and deliver them over to the plaintiffs, but for this claim and bond. The defendants cannot in one breath prevent the sheriff from replevying the goods mentioned in the writ, by claiming them as theirs, and giving a property-bond, and in the next deny that they had the goods. I do not say that in all cases, the mere pleas of non cepit and property are inconsistent, and cannot be pleaded together under the statute of Anne, giving leave to the defendant to file several pleas, but it would be more consistent if the defendant meant to contend that part of the goods mentioned in the writ, were not in his possession, to claim as his property and give bond only for those that were, and to rely on his plea of non cepit as to the rest. For

the latter, the sheriff might then return elongata, with which the plea of non cepit is consistent. 1 *L. Raym.* 613. *Salk.* 581, *S. C.* But the claim of property is not; for by it the taking is admitted. 1 *L. Raym.* 615. And this must needs be so, for if the plaintiff recovers damages, the goods claimed become the property of the defendant, and such recovery is a bar to trespass, or any other action to recover the value of the same goods, afterwards brought by the plaintiff. 1 *L. Raym.* 614. The action of replevin in Pennsylvania, is well known to be different from that in England. There it is used in cases of distress, (though some authorities say it lies for all goods and chattels unlawfully taken,) and the goods are actually taken by the defendant from the plaintiff, and are always delivered up to the plaintiff, by the sheriff, on executing the replevin, the plaintiff giving bond to restore if he fails in the action. The defendant cannot retain them by giving bond on a claim of property. Where the defendant means to deny having the goods at all, the plea of non cepit is then strictly appropriate. But in Pennsylvania replevin lies, under our ancient act of assembly, wherever one man claims chattels in the possession of another, whether the defendant took them from the plaintiff or not; and of that kind was the present replevin. In such case the plea of non cepit can only mean that the defendant had them not in his possession; the mere taking or not being immaterial. If he had them not in his possession, the sheriff could not replevy them so as to deliver them to the plaintiff, and the defendant has nothing to do but to rely on the plea of non cepit. But if he has the goods, and the sheriff can take them, the defendant must either surrender them, or if he chooses he may claim property, and retain them in his custody, giving bond to the sheriff for delivering them up, in case the property shall not be found in him. 1 *Dall.* 156. The making such claim and giving bond, is a distinct admission that he has all the goods contained in the writ, and mentioned in his claim and bond, and the return of the sheriff; and these acts preclude the defendant from giving evidence to the contrary.

Nor is the second error sustained, for we think it clear that there is nothing in the case which places the assignees in a better situation in respect to these goods, than their assignors. The doctrine relating to bills of exchange and promissory notes or other negotiable instruments transferred in the course of business for a valuable consideration and without notice, does not apply to this case; because the goods obtained by the assignors from the plaintiffs, and alleged to have been afterwards transferred by the assignment among various other effects of the assignors, were not negotiable instruments. They stand on the common footing of goods transferred by one having no title, in which case ordinarily no title passes to the grantee. Even the doctrine of the sale of chattels in market overt, which in England sometimes sanctions a transfer by one having no title, has no existence in Pennsylvania, and if it had, would not apply

to this case. The assignors are ascertained to have had no title to these five cases of prints ; the pretended purchase they made was a fraud, and the goods so far as respected them, still belonged to the plaintiffs. There may possibly be cases, in which a party may transfer a good title, although he has none himself, in consequence of the fraud existing in the procurement of them. Judge WASHINGTON, in *Copland* v. *Bousquet,* (4 *Wash. C. C.* 594,) went to the full extent of the law, when he says, that if the possession be delivered by the real owner, together with the usual indicia of property, or under circumstances which may enable the vendor to impose himself upon the world as the real owner, this might be a case of constructive fraud, which would postpone, even at law, the right of the real owner in favour of a fair purchaser, without notice and for a valuable consideration. But no such case exists here. The defendants are not purchasers either in their own right, or as representing creditors, who may release their debts on the strength of the assignment; so that it is unnecessary to examine the much litigated question, on which the Courts in New York and Connecticut are at variance, whether an antecedent debt be equally operative as a consideration, with the payment of money. Neither the assignees nor creditors in any sense of the word purchased these goods. They never applied to buy, or made any contract of sale, or so far as appears, ever saw them before the assignment. They were assigned in common with all the estate of the assignors, real, personal and mixed, whatsoever ; the assignors alone prescribing the terms of the assignment, the methods of appropriation, the subsequent sale of the property by the assignees to raise the funds, and the persons who were to participate in them, as well as the order and conditions according to which they were to be distributed ; and the assignees agreed to take the estate as the assignors offered it, without any previous dealing, bargain, contract or even knowledge, for aught that appears. It would be a solecism to call such a transaction a sale, or such a grantee a purchaser, or to apply these terms to the creditors, who accept the conditions and release their claims upon the grantor. In addition to which, all the creditors are not required even to release ; large preferences were given which might exhaust the whole fund, and as to them the case would be of a simple voluntary conveyance by an insolvent debtor, of property to the use of his existing creditors. Such a conveyance cannot be called a sale, or such creditor a purchaser. To do so would confound the most important legal distinctions, and introduce a novelty fraught with the most mischievous consequences. It would tempt an insolvent debtor to defraud his neighbours by fraudulent purchases of goods, in order that he might pass them over for the use of favoured creditors, if by his assignment he could purge the fraud, and place such creditors in the highly favoured situation of bona fide purchasers for a valuable consideration. A real purchaser giving value for property in the course of

business innocently, and acting on the faith of possession and other apparent marks of ownership, is favoured for the support of trade, and encouragement of fair dealing, and may sometimes obtain a better title than his vendor. But a voluntary assignment by a debtor, has never been considered as placing the assignee in any other situation in point of equity, than the assignor himself was; he takes the estate subject to all outstanding equities, liens, incumbrances and dealings between the assignor and others; and such has been the uniform construction put on assignments of this description. *Haggerty* v. *Palmer*, (6 *Johns. Chan. Reps.*) is not a case unlike the present. Goods were sold at auction in the city of New York, to be paid for in approved endorsed notes, at four and six months, and it is the usage in that city, where goods are so sold to deliver them to the buyer when called for, and for the vendors afterwards to send for the notes. The vendee, after he had received the goods, before he was called on for the notes, according to the terms of sale, stopped payment, and assigned over the goods with other property, in trust to pay certain favoured creditors; and it was held that the delivery of the goods by the vendors, was conditional, and the vendee a trustee for them until the notes were delivered; and that the assignment by the vendee was voluntary and fraudulent, and did not defeat the equitable lien of the vendors; there being no intervening purchaser for a valuable consideration without notice.

Judgment affirmed.