MILES G. DOBBINS, plaintiff in error, *vs.* ROBERT WALTON, and W. A. WALTON, assignees of The Augusta Insurance & Banking Company *et al,.* creditors, defendants in error.

1. Section 1495 of the Revised Code which prescribes the order of paying off the debts of an insolvent Bank; and par. 3, of sec. 1493, which gives the bill holders a priority over other creditors in the payment of debts, apply only where there has been a forfeiture of the charter and a Receiver appointed by the Court; they do not apply in the case of an assignment by the Bank of its assets to pay its debts according to the requirements of the law.

2. The Augusta Insurance & Banking Company made an assignment of its assets to assignees, for the benefit of all its creditors. Among the assets assigned were forty-four shares of the capital stock of the Georgia Railroad and Banking Company, which by the assent of the last named bank, were transferred to the names of the assignees on the transfer-book, and a certificate of stock issued in their names, by this Bank. At the time of said assignment and transfer, the Augusta Insurance and Banking Company, was indebted to the Georgia Railroad and Banking Company in the sum of $38,284, for which amount the Georgia Railroad Bank had a lien by law upon the stock. In ascertaining the respective rights of the various creditors of the Augusta Insurance and Banking Company, the Court below has decided that the transfer of the stock to assignee did not defeat the lien of the Georgia Railroad Bank:

*Held,* that the Court decided right.

Equity. Assignment. Lien. Decided by Judge GIBSON. Richmond Superior Court. January Term, 1868.

The assignees of the Augusta Insurance and Banking Company, for the benefit of its creditors, having filed their bill to carry out their trust, and, the creditors being before

the Court to have their respective rights in the assets adjusted, this state of facts presented itself—

McCallie & Jones, at the date of the assignment, held a policy of insurance, issued by said assignor, the insured property was burnt, they brought suit against the assignor on said policy for $3,291 74 with interest and costs, and obtained judgment therefor, after the date of the assignment. They claimed, that their judgment took priority over the other claims next mentioned, and should be paid in full because the assignment was void. N. Rogers & Co., of the city of Baltimore, obtained a judgment against said assignor, in Baltimore, Maryland, before the date of assignment, and afterwards transferred the same to one Blanchard. Blanchard claimed that this judgment was a liquidated demand and should be paid *pro rata* with the other claims herein mentioned. At the date of the assignment, the assignor owned and held in the name of ...... Walton, (its president and one of the assignees,) forty-four shares of the capital stock of the Georgia Railroad and Banking Company, which they assigned to said assignees; on the day said assignment was made, Robert Walton, one of the assignees, in the presence of the cashier of the Georgia Railroad and Banking Company, transferred said shares to said assignees, as such, and the Georgia Railroad and Banking Company, then and there, issued and delivered to Robert Walton, scrip in the following form:

"Georgia Railroad and Banking Company, No. 6391. Incorporated, 1833. Forty-four shares.

"This is to certify that Robert Walton, and William Walton, assignees of the Augusta Insurance and Banking Company, are entitled to forty-four shares in the capital stock of the Georgia Railroad and Banking Company, transferrable only on the books of said Company, in person, or by attorney duly authorized.

"Witness the signature of the President and Cashier at Augusta, this the 29th day of December, 1865.

"JOHN P. KING, President.

"J. MILLIGAN, Treasurer."

At the date of the assignment the assignor was indebted to The Georgia Railroad and Banking Company, in the sum of $38,284 00; and the Georgia Railroad and Banking Com-

pany, showed that it had withheld from the assignees, the dividends declared on said stock, and claimed, that it had a lien on said stock and dividends, of higher dignity than any other liens in this case; Miles G. Dobbins, held, say $18,-000 00 of the bank bills issued by the assignor before its suspension and assignment, had obtained judgment on said bills, since the assignment was made, but now accepted the assignment as valid, and wished it carried out, but set up that as a *bona fide* bill-holder of said assignor, he stood on a par in the distribution of the assets as between himself and other bill-holders; that said judgments had no priority over the liquidated demands against the assignor because their rights rested on their *status* at the date of the assignment, and that McCallie & Jones' judgment did not stand on a par with the claims of the bill-holders, because it was an unliquidated demand at the date of the assignment; he further claimed that by said transfer of stock, the Georgia Railroad and Banking Company lost its lien on the same, and finally, that as a bill-holder he had a priority in law, and should be paid in preference to any other of said claims. The Court charged the jury that the bill-holders had, in law, no preference over other persons holding liquidated demands, such as promissory notes, bills of exchange etc.; that the claims of McCallie & Jones, and of Blanchard, transferee of N. Rogers & Co., had no priority as judgments, but should be classed as liquidated demands and take equally with the bill-holders, and that the Georgia Railroad and Banking Company had not lost its lien on said stock and dividends, and should be paid out of the proceeds of the same, in preference to all other demands, and the jury rendered a verdict and a decree was had, accordingly.

Dobbins assigns each and every of said charges of the Court as error.

WM. DOUGHERTY, (by the Reporter,) for plaintiff in error.

WM. H. HULL, BARNES & CUMMINGS, HOOKS & CARR, *et al*, for defendants in error.

WALKER, J.

The Augusta Insurance and Banking Company being unable to pay its debts, assigned all of its property, real and personal, to trustees who were authorized to dispose of the same "by dividing the entire net fund among the creditors of said company of every sort and description, with no other preference than is or may be authorized by law." In directing the order in which the trustees should pay out the funds the Court decided that the holders of the bills of the Bank, by the laws of Georgia, have no preference over other creditor's liquidated demands.

This ruling was excepted to, and the learned counsel for plaintiff in error relies upon section 1493, par. 3, Revised Code, section 1495 and 2494. Sections 1493 and 1495 are placed under article III, entitled, " Forfeiture of Bank charters and liability to stockholders." After specifying the grounds for which a forfeiture may be declared, and providing for the appointment of a Receiver, the Code, in section 1493, prescribes the duties of the Receiver as follows : 1st, to convert the property into money ; 2d, to pay the creditors *pro rata*, semi-annually ; 3d, " to pay the holders of the bills before other creditors, if they give notice of their claims within six months ;" 4th, to give notice to said bill-holders and other creditors, by a three months publication ; 5th, to make annual returns of receipts and disbursements ; 6th, to distribute the assets, after paying all the debts, among the stockholders. This entire section is prescribing the duties of a Receiver appointed by the Court after the rendition of a judgment forfeiting the charter, and does not apply to a voluntary assignment for the payment of all the debts of the Bank. Section 1494 provides for the Receiver's compensation. Then comes section 1495, chiefly relied upon by counsel for plaintiff in error. This section provides that, " if the Bank is insolvent, the order of paying off the debts shall be the same as is prescribed in cases of administration, to the extent applicable, except where special preference or postponement is given by law." " If *the* Bank is insolvent."

What Bank is here referred to? Most clearly such as the preceding sections had been speaking of, namely a Bank whose charter had been forfeited and its assets placed in the hands of the officer of the Court. This construction is strengthened by referring to the three sections immediately following this one; they are all in relation to matters connected with such a Bank. Not one word is said about an "assignment by Banks," until section 1499 is reached, and this provides upon the surrender of the charter, for an assignment "as natural persons may, but it cannot thereby prevent such preference among its creditors as the law gives. Taking all the sections together, we think that the provisions of 1495, and part 3 of 1493, apply to Banks alone whose charters may have been forfeited and their assets placed in the hands of Receivers. Such Banks may very properly be recognized as deceased, and their assets paid out in the order prescribed in cases of administration. But this case is different. Here is no forfeiture and no surrender of the charter. This is a voluntary assignment by the Bank of all its assets to be divided "among the creditors of said company of every sort and description, with no other preference than is or may be authorized by law." The assignment gives no preference to any of the creditors. We have shown that the preference claimed by plaintiff in error as conferred by law is inapplicable to the facts of this case. It was not insisted that there was any other provision of the law giving any preference, and we know of none such. The rights of the respective creditors must be decided by the terms of the deed of assignment, and that is for the creditors of said company of every sort and description. The only error we see in this case was in excluding the open accounts from a participation in the general fund; but this ruling is not excepted to, and it was in favor of the party complaining here. As we hold that all the creditors of the company were entitled to share in the distribution, it is unnecessary to determine whether the claims of McCallie & Jones and others were liquidated demands or not.

2. Another question made in this record is, whether "The

Georgia Railroad and Banking Company, by assenting to the assignment, lost its lien on the forty-four shares of stock owned by the Augusta Insurance and Banking Company ?" It could not be denied that the Georgia Railroad Bank, by law, was entitled to a lien on this stock for the debts due by the owner of it, the Augusta Insurance and Banking Company. Prin. Dig., 358. Pamph. Acts, 1840, p. 25. Acts, 1843, p. 20. This is admitted, but it is insisted that the Georgia Railroad Bank assented to the transfer of the stock to the assignees, and thereby lost its lien; and authorities are cited showing that when a party voluntarily parts with the possession of the property upon which the lien has attached, he is divested of his lien. We have no fault to find with this as a general proposition; the question is, as to its application to the facts of this case. Here was a general assignment for the benefit of all the creditors, "with no other preference than is, or may be, authorized by law." To this the Georgia Railroad Bank assented. One of the preferences authorized by law, was a lien on the stock, for the amount due by the assignor. The error into which the counsel fell, was in considering this assignment as a sale to a *bona fide* purchaser, without notice. The assignee of a voluntary assignment, for the benefit of creditors, stands in no better a situation than the assignor. Neither he, nor the creditors whom he represents, are purchasers for a valuable consideration, without notice, as against prior equitable liens. Haggerty *vs.* Palmer, 6 J. C. R., 437. Knowles *vs.* Lord, 4 Wharton, 500. 2 Kent's Com. 532, (note c.)

There was no parting with the possession of this stock, in the eye of the law. All the Georgia Railroad Bank did, was to assent to the transfer from the name of the Bank to that of its assignees, for the payment of its debts; the deed of assignment recognising such preferences as were allowed by law. Most clearly this was no such sale as would defeat the lien of the Georgia Railroad Bank, and the Court did right so to hold.

There was no error in permitting other creditors to come in and be made parties to the proceedings to distribute the funds

in Court.   In the case of the Macon and Western Railroad Company vs. Parker, 9 Geo. R., 378, this Court holds that "any creditor who has a claim upon the fund, but who is not a nominal party to the suit, may make himself a party thereto in fact, by coming in and presenting his claim under the decree, and submitting himself to the jurisdiction of the Court, for its settlement and adjustment, upon the fund to be distributed."   This point was not seriously urged, though it was made in the bill of exceptions.   Upon the whole case, we see no error in the Court below.

Judgment affirmed.