Thomas B. Gresham, assignee, plaintiff in error, *vs.* James E. Crossland *et al.*, defendants in error.

The City Bank of Macon *et al.*, plaintiffs in error, *vs.* James E. Crossland *et al.*, defendants in error.

1. The creditors and stockholders of a bank will not be enjoined, at the instance of its general assignee, from instituting suit against him, the creditors not having accepted the assignment, nor reduced their de-

mands to judgment against the bank, and they having a clear right to proceed in order to fix a personal liability on the stockholders, imposed by the charter, to which proceeding they may desire to make the assignee a party in order to reach the assets in his hands.

2. Where the assignee is solvent, honest, and competent, and a case of real danger to the assets in his hands is not made, and where the creditors have the security of ultimate liability by solvent stockholders, the assignee will not be enjoined, at the instance of the creditors, from controlling the assets, pending a bill to set aside the assignment and to recover from the bank, etc., and a receiver will not be appointed to supersede the assignee in his functions before a final decree.

Injunction and receiver. Banks. Stockholders. Assignment. Before Judge HILL. Bibb county. At Chambers. June 9, and July 2, 1877.

Gresham, as assignee of the City Bank of Macon, filed his bill against Crossland and other creditors of said bank, for injunction, making, in substance, the case presented in the first division of the opinion. On the the 9th of June, 1877, the injunction was refused, and complainant excepted.

As soon as the above decision was rendered, Crossland and others, presented a bill against said bank and Gresham, assignee, asking for injunction and the appointment of a receiver, alleging, in substance, as follows:

They had deposited their money in said bank on the full faith and confidence that it would carefully keep and pay over the same to the order of orators, as it had contracted to do; this it had failed to do, and had misappropriated the same to the payment of creditors of said bank, in satisfaction of claims and demands for the most part, if not altogether, existing against said bank prior to the times of making the deposits by your orators, and having thus misappropriated, and having by carelessness and mismanagement wasted and disposed of all the cash and cash assets, including the money of the bank and of defendants, made this assignment. They allege that the assignment is illegal, unauthorized and void, as against complainants and the other creditors of said bank.

1. It does not appear who are the legal directors of said bank, or what number, and who were present and joined in said assignment.

2. There is no authority in the directors to make said assignment of the entire assets of the bank; such assignment could only be made on the authority of the stockholders, if at all; when made by the directors it is *ultra vires*, and complainants have never consented to the same.

3. The said assignment has been made, principally, as complainants believe and charge, for the purpose of hindering and impeding and delaying complainants and others, creditors of said bank, in their efforts to enforce the prompt and speedy payment of the debts due them by said bank, and complainants cite in evidence of the fact that the assignee filed his bill as before referred to.

They further state that while they have confidence in the personal integrity and capacity of the said assignee, still, on account of the professional relationship of the said assignee to the bank and its officers, they fear and charge that said bank and its stockholders will not be proceeded against actively by him to secure the speedy and full payment of said debts to complainants and other creditors of said bank, but, on the contrary, that the sympathies and interest of the said assignee are necessarily antagonistic to the speedy payment of your orators and other creditors of said bank, by active and energetic proceedings against said bank and its stockholders; and in that connection they say that said assignee is now, and has been for years, the regular retained counsel of said bank, and they, complainants, repeat that as such assignee, he has appealed to the courts to stay complainants and other creditors of said bank from proceeding against him and said bank, until he could collect its assets.

Complainants' interest in the premises could not be satisfactorily protected and controlled in the hands of the said assignee, or in the hands of any other person as assignee, but that said interest demanded that whosoever controls said assets

should stand in the capacity of the receiver and agent of the court, and subject to its immediate direction and control.

Having made said assignment, the bank closed its doors on the 14th May, 1877, and suspended business and payments, the officers admitting and avowing their inability to pay these debts.

According to their information, the debts due to them and other creditors by the bank will amount to more than $40,-000.00, for the payment of which the bank has no cash or cash assets, and the real and personal property in its schedules is of but little cash value, and much the greater portion of the *choses* in action is against persons notoriously insolvent, and the remainder of such character that the collection of any portion of them can only be secured by the earnest efforts of those interested in the collection of the same, and they believe that the amount which can be collected from said assets by the utmost diligence will be insufficient to pay said indebtedness.

Complainants also state, in this connection, that a large part of the holders of the capital stock of said bank, denominated by some as *new* stockholders, claim to have just money demands against the remaining stockholders in said bank, and that between said classes of stockholders there are disputes and threats of suit, and the actual beginning of litigation. Complainants have reason to fear, and do fear, that in said disputes and litigation between said stockholders the assets of said bank will be in a large measure, if not entirely, wasted, misappropriated, and lost to the just creditors of said bank; and while they have no interest in such disputes, and are ignorant of the merits, their right to have said assets applied exclusively to the payment of their debts cannot be affected thereby, and authorizes them to invoke the aid of this court to protect them against said threatened losses.

They further charge that said bank, and the various officers who have had the management of the same, have for many years enjoyed a large measure of the confidence of complainants and the business community; its capital was

known to be large, and a great portion of the stock was owned by well-known capitalists. Complainants believing said bank to be solvent, with full confidence in its management, made their deposits, when, in fact, the said bank was, and is now, utterly and entirely insolvent.

By the charter of said bank there is an ultimate liability upon its stockholders for the payment of its debts, in the proportion of the stock held by each, but as some of them are insolvent, an energetic and careful collection of the assets, and their exclusive appropriation to the debts of complainants, is necessary for their security and protection, which can only be secured by placing the same, under the direction of the court, in the hands of a receiver—complainants and the creditors being alone interested in the amount to be realized from the said assets.

Discovery was waived.

The complainants subsequently amended their bill by alleging as follows: "The board of directors of said City Bank of Macon, at the time of said assignment, was not a legally constituted board of directors, because John B. Ross and Wm. H. Ross were not possessed, in their own right, of the amount of the capital stock of said bank necessary to qualify them to be directors under the charter; further, that said assignment was not a full and *bona fide* one, for since the filing of their bill they have learned that a large amount of valuable property which belonged to said bank was not included in the schedule of its assets, among which was a note on Mrs. Wise for $600.00, and two on Wm. F. Anderson, indorsed by T. J. Cater—one due January 1st, 1878, and the other January 1st, 1879, for $2,500.00 each; and they charge that these and a large amount of other assets, are now held by said bank and not included in said schedule, for just before making said assignment, and after it had been determined on, they were transferred to certain favored creditors.

And while said schedule does not embrace any money, still, since said assignment, said bank has paid out money to

certain depositors and creditors, among others, $300.00 to W. E. McAndrews and Mrs. Raleigh Hutchings, and, as they are informed, also to Mrs. M. A. Washington and to Mrs. Napier.

The schedules annexed to their bill as exhibits, were taken exclusively from the statements of the bank. Complainants know nothing of their correctness further than herein stated, and your orators believe the schedules do not contain a statement of all the creditors and all the assets which said bank held immediately before said assignment and after the same had been determined on.

Complainants charge that said bank, for more than a year past, has not made any statement of its liabilities, assets, and general condition; also, that although the former president of said bank was indebted to it, as subscriber, for 125 shares, he has not paid, or been required to pay, the amount due for the same, but has been allowed to give a note without security, to collect which no effort has been made.

They charge, on information, that there are other stockholders who have not paid their subscription to stock.

The affairs of said bank have been grossly mismanaged; although said bank has been insolvent for more than a year past, as it now appears, it has all that time been receiving deposits from orators and others, who were ignorant, and kept in ignorance, of such insolvency—their deposits having been used, as they believe, mainly, if not wholly, in paying pre-existing debts; had complainants known the true condition of said bank, they state they would not have deposited their money therein. Goodall, the cashier of said bank, a few days before said assignment was made, and frequently before that, from time to time, whilst J. E. Crossland, one of your orators, was making deposits in said bank, told said Crossland that said bank was in good condition, and had plenty of money to pay its depositors.

The true condition of said bank, and a proper understanding of the manner in which its affairs have been managed, can only be ascertained by reference to the books and

other papers belonging to the bank, none of which are within their control, and they submit whether said books, papers and assets ought to be placed in the hands, not of a person selected by the officers of said bank, but of a suitable person to be appointed by your honor, who is, and has been, wholly disinterested with the bank and its business, and who would be free to investigate its affairs and manage its assets, uninfluenced by the officers of said bank.

They state, on information, that the building in which said bank has recently done its business, was recently sold to one of the directors of said bank; they do not know whether the sale was for a full price, or whether it was legally made, or what disposition was made of the proceeds, but they ask that the books of said bank relating to said transaction be produced, that it may be inquired into.

They also state that C. A. Nutting, formerly president, shortly before the suspension, conveyed to the present president a portion of the lease in the Western and Atlantic Railroad, but for what purpose, or on what account, they do not know; but they claim that, as Nutting was indebted to the bank, and in embarrassed, if not insolvent, circumstances, that the officers of said bank were neglectful of their duty, and guilty of mismanagement, to take no steps to subject said Nutting's interest in said lease, or any other property of his, to the payment of his debt to said bank, especially as he was then about to absent himself from the state for a protracted period of time.

The defendants answered the bill and the amended bill, denying the material allegations, and alleging that the affairs of the bank had been conducted in good faith, and for what appeared to be to the interest of the creditors. They deny that the assignment was made to hinder or delay creditors, but allege that it was made in entire good faith, for the purpose of collecting the assets of the bank, and paying complainants and other creditors as early as possible. They deny that any depositors or creditors have been preferred or paid since the assignment, etc.

On the 2d of July, the chancellor passed the following order:

"After considering the above bill and amendments, and the answers, amended answers and affidavits submitted, it is ordered by the court, that the writ of injunction issue as prayed for, in the penalty of $10,000.00; and that Thomas B. Gresham, Esq., hold, as receiver, the property and assets of said bank, whether now in the possession of said bank or its assignee, and collect said assets as speedily as practicable, and hold the proceeds subject to the order of the court, or deposit the same in the Macon Savings Bank at interest, payable within thirty days after such deposit is made, the said proceeds to be distributed as and when directed by the court. Said receiver is authorized to make such compromises of debts due said bank, and in his hands as receiver, as he shall deem best, and as may be approved by the president of said bank, or, in his absence, by any one of the directors of said bank. He is also authorized to pay taxes due by said bank for which the property and assets in his hands are liable, and to pay any absolutely necessary expenses of collecting said debts without first obtaining an order of the court, but all other payments are to be made only after being directed by the court.

"Said receiver shall report his actings and doings, as such, on or before the first day of the next term of Bibb superior court."

To this judgment defendants excepted.

LYON & NISBET; WHITTLE & WHITTLE, for plaintiffs in error.

LANIER & ANDERSON; HILL & HARRIS; BACON & RUTHERFORD, for defendants.

BLECKLEY, Judge.

1. On a bill filed by the general assignee of an insolvent bank, against all the creditors and stockholders, the object

of which is to obtain direction in executing the terms of the assignment and to compel the defendants to come into the complainant's suit, under the bill, and there litigate and settle their respective rights and claims, and to distribute the entire assets of the bank when collected, an injunction *ad interim* will not be granted to restrain the defendants from instituting suits against the complainant, it not appearing that the creditors have accepted the assignment, or that they intend to claim under it and not against it, and there being, also, a good legal reason why the creditors, whether they accept or reject, should be left free to sue the bank, and to join in their suit the assignee as a party defendant, if they should think proper to do so. That the creditors have not yet reduced their demands to judgment, and that they have for security, by the terms of the bank's charter, the personal liability of the stockholders, enforceable under sections 3371, 3372 of the Code, is reason sufficient in the present case. As the remedy given by these sections is to plaintiffs or complainants, the creditors should not, without fault on their part, be restrained from taking the character of plaintiffs or complainants, and be obliged to fill that of defendants only. Moreover, should they wish to attack the assignment for fraud or illegality, it is plain that they should be allowed to do so. There is no reason why they should not be free to commence proceedings of their own choosing for that purpose, if for no other. And success in such proceedings would put an end to the assignee's interest in the whole matter, and strip him of the assets. Were he as strong as an administrator (but he is much weaker), he would not necessarily be entitled to the injunction for which he applies, as against creditors, whose claims are not in judgment. 1 Story's Eq., § 544. The assignee was created on the 12th of May, and on the 16th, *ætatis* four days, he sends forth his challenge, he denies to his adversaries any right in the selection of weapons, or any voice on the time or place of the meeting. He warns them to appear in the forum of his own choice on a certain day, there to plead, answer or de-

mur, and take the consequences. In the meantime, he wants peace to reign. He wants no gage of battle thrown down to him elsewhere. He wants all disputes to abide the abitrament of one general engagement, brought on by himself and fought upon ground which he has selected. With the court below, we think he cannot rightfully aspire to such a commanding position. The injunction was properly refused. Further than this we have no concern, at present, with his bill.

2. Passing now to the bill filed by the creditors, one object of which is to break up the assignment, and have the assets placed in the hands of a receiver, we think the court erred in interfering summarily with the assignee's possession and management. Nothing is alleged against the integrity, the solvency, or the intelligence of the assignee. A case of real danger to the assets in his hands is not made; nor is it shown that the stockholders are wanting in solvency to an extent which renders their personal liability, under the bank's charter, a doubtful security to the complainants.

As the stockholders are bound for the corporate debts, they, if fully able to respond to creditors, are deeply interested in preserving the assets, in having them speedily collected and properly applied, and in making them go as far as possible towards discharging all the liabilities of the bank. The stockholders stand behind the corporation, and must make good all deficiencies—the amount of their stock being greatly in excess of the corporate indebtedness. They, it seems, are content to let the assignee hold the position in which the assignment placed him. They ratified his appointment. He has their confidence, and if he misbehaves, they must respond on their charter liability. We see no good reason to doubt that the assignee will be faithful, and should he be unfaithful, it does not appear that he would be unable to make satisfaction for his delinquencies, and were he to prove unable, the creditors would still have the stockholders between them and ultimate loss. Here, then, is almost a certainty that creditors will get their rights.

They, by this bill, have commenced the prosecution of their remedies, which reach, or may be made to reach, all property, corporate or private, to which they can resort for payment. And this result will equally follow, whether the assignment be upheld or set aside. If, in the progress of the litigation, a receiver should become necessary, one can be appointed. But to appoint one now, is equivalent to defeating the assignment before any decree has been pronounced against it, and before danger to the fund has become apparent. Taking the bill, the answer, and the affidavits, all together, and looking at the whole case, the element of danger is wanting, and in the absence of that element, the assignee should not have been superseded in his functions by the appointment of a receiver. That the bank could make the assignment, see 37 *Ga.*, 611; and that the action of directors *de facto*, especially after ratification, is sufficient, see 56 *Ib.*, 251.

Counsel for the bank and for the assignee cited : Code, §1493 *et seq.;* Code of 1861, §1954; Acts of 1865–6, p. 29; 37 *Ga.*, 612; Code, §1952. 37 *Ga.*, 611, 614; 56 *Ib.*, 155; 4 Mason, 206; 91 U. S. R., 496; Acts of 1874, p. 242, §§1 and 3; 1 Saxton's Eq. Rep., 542; 11 Mass., 288; 5 New York, 320; 2 Metcalf, 163; Ang. & Ames Cor., §287; 56 *Ga.*, 257; 1 Sax. Eq. Rep., 556; 41 *Ga.*, 454, 463; 36 *Ib.*, 517, 518; 38 *Ib.*, 514, 518; 19 *Ib.*, 490; 16 Wall., 501; Code, §§3098, 3149, 1486, 1688, 1494.

Counsel for creditors cited : 1 Red. Rail. Ca., 187–9; Brice's Ultra Vires, 148, 152, notes, 248, 258; Cent. Law Jour., Dec. 3, 1875, p. 785; *Ib.*, Oct. 15, 1875, p. 670; 1 Otto, 45, 56, 58, 65; Her. on Estop., §§572 573, 575, 578, 580; Big. on Estop., 503; 37 *Ga.*, 611; Code, §§1485 to 1490; 37 *Ga.*, 619; 19 Wall., 1; 1 Hill, 302; 1 Strange, 165; 2 Lansing, 81; 2 U. S. Dig., (New Series,) 100; 1 Paige Ch. R., 82, 515; 2 Story's Eq., §§827, 831, 839, 841; Burr. on Assign., 623; Code, §274.

Judgment in the former case affirmed, and in the latter, reversed.