## SEAY *et al. vs.* BANK OF ROME *et al.*

[JACKSON. Chief Justice, being disqualified, Judge Crisp, of the Southwestern circuit, was designated by the governor to preside in his place.]

1. The caption of the act of October 16th, 1879, "To establish state depositories in the cities of Atlanta (and other cities named) and to prescribe their duties and liabilities," was sufficiently broad to cover a provision in the body of the act for the giving of bonds by the depositories, to be enforced in case of default in like manner as those of state treasurers are enforced; such act is neither objectionable as containing more than one subject matter nor as containing in its body matter different from the caption.

2. From the date of the execution of the bond of a state depository the state has a lien on its property for the amount thereof, and upon default the governor has authority to issue execution at once, in like manner as against a defaulting treasurer.

(*a.*) The lien of the state is not limited to such property of the depository as may be reached by levy and sale, but extends to all the property, including choses in action.

3. A chartered bank may make a voluntary assignment for the benefit of its creditors, but neither the assignee nor the creditors whom he

represents stand in any better situation than the assignor in respect to prior equitable liens.

4. Aside from the bond, where both the state and individuals are creditors of an insolvent, the state is entitled to priority of payment in the distribution of the estate.

Banks.   Constitutional law.   Liens.   State depositories.   Debtor and creditor.   Before Judge UNDERWOOD. Floyd County.   At Chambers.   April 9th, 1881.

Reported in the decision.

D. S. PRINTUP; JOEL BRANHAM, for plaintiffs in error.

CLIFFORD ANDERSON, attorney general; DABNEY & FOUCHE; C. M. FEATHERSTON; C. ROWELL, for defendants.

(The principal questions in this case being also involved in the case of *Creditors vs. The Citizens' Bank*, pending in Fulton superior court, counsel in that case asked leave to be heard in this.   It was granted, and Messrs. L. E. Bleckley, John L. Hopkins and Z. D. Harrison appeared for the general creditors, and Mr. R. J. Moses appeared with the attorney general for the state.)

CRISP, Judge.

On the eleventh day of November, 1879, the governor of this state, under and by virtue of the act of the genral assembly approved October 16th, 1879, appointed the Bank of Rome, a corporation doing business in the city of Rome, in this state, a depository.   On the fifteenth day of November thereafter, said corporation made and executed the bond required by law.   During the year 1880, the treasurer of this state deposited in said bank of the funds of the state the sum of $25,500.80, and the tax collectors of the various counties designated by the governor deposited with said bank large amounts of the

taxes collected by them. On the twenty-fifth day of March, 1881, the Bank of Rome suspended, and assigned all of its property, real and personal, notes, accounts, money and choses in action to John H. Reynolds, of the county of Floyd, for the benefit of its creditors, "*pro rata*, or in full, if there should be enough to pay in full, with no other preference than is, or may be, allowed by law." There is, in the deed of assignment, a recital that the bank is "justly indebted to various parties, in sundry considerable sums, and has become unable to pay and discharge the same with punctuality, or in full." On the thirtieth day of March, 1881, plaintiffs in error, depositors in said bank, filed their bill in Floyd superior court against the Bank of Rome *et al.*, charging, among other things, that the Hon. D. N. Speer, treasurer of this state, the state being a large creditor of the bank, was claiming a first lien on all the assets of said bank, and was attempting to seize and take possession of the same, that the bank was insolvent, and could not pay more than fifty cents on the dollar of its indebtedness; the prayer is for the appointment of a receiver to take charge of the property of the bank, and collect the assets, and to administer the estate for the benefit of all the creditors under the assignment and the direction of the court, that all parties having claims against the bank and all parties indebted to the bank might be made parties to the bill, and interplead the one with the other; there is also a prayer for an injunction, to restrain and enjoin all persons whomsoever from interfering or meddling with the assets of said bank in any way, except under order of the court. This bill was presented to the chancellor, who granted a rule to show cause, returnable on the ninth day of April, 1881, and also a temporary restraining order The Bank of Rome at the date of the assignment had received, and not accounted for, of the state's funds the sum of $53,-015.73. On the first day of April, 1881, the governor of this state, against the Bank of Rome and its

securities on the bond hereinbefore mentioned, issued a writ of *fieri facias* for the full amount of said bond, fifty thousand dollars, which *fieri facias* was, on the second day of April, 1881, by the sheriff of the county of Floyd, levied upon the real estate and fixtures of said bank (neither the governor nor the sheriff had knowledge of the restraining order of the chancellor, and no point was made on that ground). To this bill the Rome Bank and the assignee made answer. The bank answered that the assignment was made in good faith, for the benefit of its creditors without preference, and submits the distribution of the assets and settlement of priorities to the court, under the assignment, and through the assignee. The assignee answered, admitting the assignment and his acceptance, says he has been notified of the state's claim of priority, asks that the sheriff and the attorney general may be made parties in behalf of the state, and that all parties having claims against said bank may be required to interplead, and settle their respective rights, and that he may have instructions in the premises; he also attaches an itemized list of the liabilities of said bank, and a statement of its assets. The indebtedness of the bank exclusive of capital stock is $165,462.19, of this amount there is due the state $53,015.75; other depositors $28,272.34; depositors on certificate, $17,496.23; the nominal assets are $200,000.00. At the hearing on the 9th of April, the complainants amended their bill in several particulars, not necessary to be mentioned here; after argument the chancellor refused the injunction sought and held that the state was entitled to a prior lien over all other creditors of the bank, for the whole amount of the debt due the state by said bank, on all its property, both real and personal. To this decision the complainants filed their bill of exceptions, and we are asked to review that judgment.

1. Counsel for plaintiff in error insist that the act of October 16th, 1879, creating state depositories, is uncon-

stitutional, because, as they allege, the caption of the act contains more than one subject matter, and the body of the act contains matter different from the caption. We recognize the fact that if this criticism were well taken, we would be forced, under the imperative mandate of the constitution itself, to declare the act void, but we fail to perceive that the act does contain more than one subject matter, to-wit : the creation of state depositories, or that the matter in the body of the act is at all different from what is naturally suggested by the caption, to-wit : defining its duties and prescribing its liabilities. 21 *Ga.*, 592, 612, 613 ; 62 *Ib.*, 473 ; 31 *Ib.*, 69.

2. By the terms of the act creating depositories, banks accepting the appointment are required to give bond and security, to be approved by the governor, in the sum of fifty thousand dollars, conditioned for the faithful performance of such duties as shall be required of them, and for a faithful account of all money or effects belonging to the state that may come into their hands during their continuance in office ; and it is further provided that said bonds, when given, shall have the same binding force and effect as the bond now required by law to be given by state treasurers, and in case of default, shall be enforced in like manner. In order to find what is the "binding force and effect " of the bonds given by these depositories, and how, in case of default, the rights of the state can be enforced against them on said bonds, we must look to the law in regard to the bonds of state treasurers. By the third section of an act of the general assembly, approved February 25th, 1876, entitled " an act to define the obligations pertaining to the office of treasurer," it is provided that the treasurer shall give bond with good security, etc., and " that the property of the securities, to the amount for which they may be severally bound, shall be liable for the faithful performance by the treasurer of the duties of his office from the execution of the bond, and a lien is hereby created in favor of the state, upon the property

of the treasurer to the amount of the bond, and upon the property of the securities to the amount for which they may be severally liable, from the date of the execution thereof." By the fourteenth section of said act it is provided that in case of default "it shall not be necessary to sue the official bond, but the governor is hereby authorized to issue a *fi. fa.* instanter, against the treasurer and his securities for the amount due the state by the treasurer." It will thus be seen, that from the day of the execution of the bond by the bank, the state has had a lien upon its property for the sum of fifty thousand dollars. To enforce that lien, under and by virtue of the act creating it, the governor issued the *fi. fa.* against the Bank of Rome, and we think he had ample authority so to do. Plaintiffs in error contend that the state has no lien on the notes, accounts and choses in action of said bank, because, under our, law a judgment fixes no lien on such property, and no levy and sale thereof can be had at law. The reply is, that upon the execution of the bond, the law gave the state a lien upon all the property of the bank; not upon such property only as a judgment would fix a lien upon; not upon such property only as is subject to levy and sale; but upon all the property of the bank. Are not notes and accounts property? Can any reason be given why it is not competent for the legislature to give a lien upon notes and accounts, as well as upon any other property? Now the *fi. fa.* issued by the governor has been levied by the sheriff of Floyd county, upon such of the property of the bank as was subject to levy and seizure under that process; he has not levied upon the choses in action, because the law will not permit him to do so, but does the state lose the lien established by law, simply because it cannot be enforced at law? The assets of this bank are legal assets, (18 *Ga.*, 108,) they are in the possession of a court of equity, placed there by the act of complainant, why not enforce the lien then? Equity is not antagonistic to, it follows, the law, and we see no

reason why a court of equity will not collect these legal assets of the bank, and distribute the fund, recognizing and enforcing the liens and priorities established by contract and by law. By virtue of said bond, the state obtained a lien on the property of the bank for the sum of fifty thousand dollars, the execution issued thereon by the governor may be levied upon and proceed against any of the property of defendants that is subject to levy and sale by that character of process, and the entire assets of said bank in the hands of the assignee or receiver being legal assets, upon which the state has a lien, a court of equity in the distribution thereof will recognize the lien of the state ; from whatever source the fund is derived, it is the property of the bank, and upon that property the law has fixed the lien of the state.

3. The assignment does not effect the rights of the state. " The assignee of a voluntary assignment for the benefit of creditors, stands in no better situation than the assignor ; neither he, nor the creditors whom he represents, are purchasers for a valuable consideration without notice, as against prior equitable liens." 37 *Ga.*, 619, and authorities there cited. That a corporation chartered by the general assembly, that has not been dissolved either by judgment of forfeiture, or by a surrender of its franchises accepted by the legislature, may make an assignment in trust for all its creditors, seems to have been settled by this court. 37 *Ga.*, 611. For myself I doubt the propriety of that ruling, and were that an open question, I am inclined to the opinion that a bank, a chartered corporation, cannot make an assignment until it has surrendered its charter, and such surrender has been accepted by the state This court, however, having held otherwise in 37 *Ga.*, and that ruling having been recognized in 56 *Ga.*, 251, and 59 *Ga.*, 270, it is now binding on the court. The assignee takes the assets subject to the preference and priorities that the law gives. Code, §1493.

4. The next and last question we shall consider is as

to the right of the state to priority of payment out of the estate of an insolvent, aside from the bond, or for the excess of the claim of the state above the amount of the bond.

"The sovereign right of the state to priority of payment out of the effects of an insolvent is based upon the common law, and was adopted by the act of 1784, which introduces into the jurisprudence of Georgia the whole body of the common law not inconsistent with our new frame of government, and subject, of course, to legislative modification.    It is a wholesome right, and as such should receive the sanction and approbation of the courts."    18 *Ga.,* 66.

"This right of priority is not inconsistent with the principles or spirit of our institutions, but is necessary for the protection of the public revenue, so as to enable the government to accomplish the end of its institution" *Ibid.*

"This privilege does not embarrass the debtor.    He may aliene or encumber his estate, or use it in any way which his interest or convenience may dictate.    It merely regulates the rights of creditors, placing the state upon higher grounds than private creditors, and as the government is established for the good of the whole, and can only be supported by means of its revenue, ought not this revenue to be protected for the benefit of the whole?" *Ibid.*

"The *fi. fa.* in favor of Dickson was an older lien than the *fi. fa.* in favor of the state, and would have been entitled to the money if this had been a contest between two individuals. . But in a contest between the state and an individual, we hold that she takes precedence without regard to the date of the lien.    8 *Ga.,* 479; 11 *Ib.,* 364; 37 *Ib.,* 240."    38 *Ib.,* 171.

The foregoing decisions of our own court seem to be conclusive of the question.    It has been the well-settled rule in Georgia, from the organization of its government

as an independent sovereign state down to the present time, that debts due her have priority in the distribution of the estate of an insolvent, over debts due private individuals. We question not the truth of the statement of counsel for plaintiff in error, that the enforcement of this rule in this case will seriously and injuriously affect some of the depositors and creditors of this bank, but we are in nowise responsible for that—we must enforce the law as we find it. The judicial department of the government has no power to relieve persons who suffer *legally*. The act of the general assembly creating depositories did not compel the Bank of Rome to accept the appointment, nor did it compel other persons to make or keep deposits therein when the bank accepted the appointment of depository. All other persons whomsoever knew, or by reference to the law of the land as contained in our statute books, and expounded by this court, might have known, that for any sum due the state by said bank the state was entitled to priority of payment over private depositors. With this knowledge, they permitted their money to remain on deposit in said bank, and now that the bank has failed they must be content to "reap the fruit of the tree they planted."

The judgment of the court below is affirmed.